Danny J. HENSLEY, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1179.

United States Court of Veterans Appeals.

May 18, 1993.

Danny J. Hensley, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Jacqueline M. Sims, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant, Vietnam veteran Danny J. Hensley, appeals from a March 13, 1991, Board of Veterans' Appeals (BVA or Board) decision denying service-connected disability compensation for bilateral hearing loss. The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. For the reasons set forth below, the Court will vacate the BVA decision and remand the matter for readjudication.

### I. Background

The veteran served in the U.S. Navy from October 10, 1969, to August 17, 1973. R. at 13. On his applications to the Department of Veterans Affairs (VA) for service-connected disability benefits, he reported having served on an aircraft carrier and having incurred hearing loss as the result of working on and around jet aircraft in service. R. at 16, 22. Although the service records before the Court do not specifically mention service on an aircraft carrier, his service separation report states that his last duty assignment was with an attack squadron and that he had nearly three years of foreign and/or sea service during the Vietnam Conflict. R. at 35.

At his August 1969 examination for entrance onto active duty, the following threshold hearing levels were reported on audiometric testing:

|  | 500 | 1000 | 2000 | 3000 | 4000 | (Hertz) |
|---|---|---|---|---|---|---|
| RIGHT: | 10 | −5 | −10 | — | −5 | (decibels) |
| LEFT: | 10 | −5 | −10 | — | 60 | |

R. at 2. The examiner diagnosed "Def[ec-tive] hearing". *Ibid.* Audiometric testing measures threshold hearing levels (in decibels (dB)) over a range of frequencies (in Hertz (Hz)); the threshold for normal hearing is from 0 to 20 dB, and higher threshold levels indicate some degree of hearing loss. CURRENT MEDICAL DIAGNOSIS & TREATMENT 110–11 (Stephen A. Schroeder et al. eds., 1988). As explained in part I.A., below, however, hearing loss does not constitute a disability for VA purposes when the threshold levels at 500, 1000, 2000, 3000, and 4000 Hz are all less than 40 dB and at least three are 25 dB or less. *See* 38 C.F.R. § 3.385 (1992). The record does not contain any records of treatment for hearing problems in service. At his August 1973 separation examination, the veteran's hearing levels were measured on audiometric testing as follows:

|  | 500 | 1000 | 2000 | 3000 | 4000 | (Hz) |
|---|---|---|---|---|---|---|
| RIGHT: | 35 | 25 | 15 | 5 | 10 | (dB) |
| LEFT: | 5 | 0 | 0 | 20 | 70 | |

R. at 10. With the exception of the left-ear result at 500 Hz, all of the scores showed a worsening of hearing at separation when compared with the scores at entrance. The examiner diagnosed "HFHL [high-frequency hearing loss] both ears." *Ibid.*

In January 1990, the veteran filed with a VA regional office (RO) an application for service-connected disability compensation for hearing loss. R. at 16. On his application, he reported having received treatment for his hearing loss since December 1989. R. at 17. The RO received reports of a December 1989 private physical examination and of December 1989 and January 1990 private audiometric testing. R. at 19–20, 34. In the report of the physical examination, the examiner diagnosed "bilateral [HFHL]" due to "probable noise trauma". R. at 34. The audiometric test reports recorded threshold hearing levels of 75 and 85 dB at 4000 Hz and 65 and 40 dB at 3000 Hz in the right ear; none of the other recorded thresholds was above 30 dB. R. at 19–20. On the January 1990 report of audiometric testing, the examiner noted that the veteran's noise exposure had included "military—jet aircraft[,] some equipment/machinery[, and] hunting", and that his last exposure had been in October 1989. R. at 20. In a January 1990 letter to VA, the examiner indicated that the veteran had bilateral sensorineural hearing loss, and stated: "patient to wear ear protection in noise—high risk for noise damage because of years with jet aircraft, machinery...." R. at 31.

The veteran was given a VA audiometric examination in April 1990, at which time his hearing levels were reported as follows:

|  | 500 | 1000 | 2000 | 3000 | 4000 | (Hz) |
|---|---|---|---|---|---|---|
| RIGHT: | 25 | 20 | 15 | 5 | 40 | (dB) |
| LEFT: | 5 | 10 | 0 | 45 | 90 | |

R. at 25–26. Except for the scores at 4000 Hz in both ears and 3000 Hz in the left ear, the veteran's hearing was generally not worse than it had been at separation in 1973. His score on a "speech recognition" test was 96%. *Ibid.* He was diagnosed with "bilateral, high-frequency, sensorineural hearing loss." R. at 25. The examiner noted that he had had an 18–to–19–year history of unilateral loss in the left ear. R. at 26.

In a June 1990 decision, the RO denied service connection for bilateral HFHL, concluding that hearing in the right ear had been within normal limits at separation, and that, although there was hearing loss in the left ear at separation, the record of the entrance examination showed that such hearing loss was present at entry and that the condition was not aggravated beyond the normal progression of the condition. R. at 36–37. The veteran filed a Notice of Disagreement in June 1990 in which he stated that the examination at separation from service did not sufficiently evaluate whether his hearing loss may have been related to his exposure to jet engine noise and that the examiner had told him then that his discharge would be delayed if he wanted to pursue that issue. R. at 42–43. After the RO issued a Statement of the Case, he submitted a Form 1–9 (Appeal to the BVA), again asserting that his in-service noise exposure had caused hearing loss. R. at 50–51.

158

In the March 13, 1991, BVA decision here on appeal, the Board denied service connection for hearing loss. *Hensley*, BVA 91–____ (Mar. 13, 1991). With respect to the right ear, the Board concluded that "the veteran's hearing acuity in his right ear was within normal limits during service, and [HFHL] in the right ear was not present until many years after service." *Id.* at 5. With respect to the left ear, the Board noted that the threshold levels of 60 dB and 70 dB in the 4000 Hz range recorded on the entrance and separation audiometric tests, respectively, were outside of normal limits and represented a 10–decibel diminishment in hearing acuity at that level during service. *Id.* at 4. The Board concluded, however, that the recorded diminishment in hearing during service was "of minimal significance in demonstrating an increase in the severity of any preservice hearing deficit" and that the evidence, therefore, did not demonstrate that the veteran's preexisting right-ear hearing disability had been aggravated during service. *Ibid.*

On appeal to this Court, the appellant asserts that the BVA erred in concluding that his hearing was "within normal limits" upon separation from service and in failing to consider whether any hearing loss becoming manifest after his separation from service was related to his exposure to noise trauma during service. In August 1992, after the Secretary had filed a motion for summary affirmance, the Court ordered the Secretary to file a supplemental memorandum of law; the Court also permitted appellant to file a response to that memorandum. The Secretary filed his memorandum in October 1992, and the appellant filed a response in December 1992. The Court appreciates the contributions of both parties.

## I. Analysis

### A. Requirements for Establishing Service Connection for Hearing Loss

Service connection for VA disability compensation purposes will be awarded for any disease or injury that was incurred or aggravated during the veteran's active service or was initially manifested to a

degree of 10% or more within an applicable presumption period. *See* 38 U.S.C.A. §§ 1110, 1112 (West 1991); 38 C.F.R. §§ 3.303, 3.307 (1992). Furthermore, when a disease was not initially manifested during service or within the applicable presumption period, "direct" service connection may nevertheless be established by evidence demonstrating that the disease was in fact incurred or aggravated during the veteran's service. *See* 38 U.S.C.A. § 1113(b) (West 1991); 38 C.F.R. § 3.303(d) (1992); *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992); *Godfrey v. Derwinski*, 2 Vet.App. 352, 356 (1992); *Douglas v. Derwinski*, 2 Vet.App. 103, 108–09 (1992).

Entitlement to service connection for impaired hearing is subject to the additional requirements of 38 C.F.R. § 3.385 (1992), which provides:

Service connection for impaired hearing shall not be established when hearing status meets pure tone and speech recognition criteria. Hearing status shall not be considered service-connected when the thresholds for the frequencies of 500, 1000, 2000, 3000, and 4000 Hertz are all less than 40 decibels; the thresholds for at least three of these frequencies are 25 decibels or less; and the speech recognition scores using the Maryland CNC Test are 94 percent or better.

In *Ledford v. Derwinski*, 3 Vet.App. 87, 89 (1992), the Court held that the regulation, although prohibiting an award of service connection where audiometric test scores are within the established limits, does not prevent a veteran from establishing service connection on the basis of post-service evidence of hearing loss related to service when there were no audiometric scores reported at separation from service. The Court noted there that the Secretary's stated purpose in promulgating section 3.385 in 1990 was "to establish criteria for the purpose of determining the levels at which hearing loss becomes disabling" and to establish "a department-wide rule for making determinations regarding service connection for impaired hearing". *Id.* at 89 (quoting 55 Fed.Reg. 12348–02 (1990)). The Court stated: "In one sense, the regu-

lation mixes apples and oranges in that it uses criteria for hearing loss to determine service connection and not degree of disability". *Ibid.*

■ In its August 1992 order in this case, the Court directed the Secretary to file a memorandum addressing, inter alia, the following issue:

Does 38 C.F.R. § 3.385 (1991) establish that service connection for hearing loss may be awarded *only* when the level of hearing loss evidenced by audiometric and speech recognition testing meets that regulation's threshold criteria *at the time of separation from service;* or may a veteran establish service connection where, as here, there is evidence of worsening of hearing in service (but not meeting the regulation's threshold criteria) and some years after service the veteran's hearing loss meets the regulation's threshold criteria? If it is the latter, the Secretary should further address the issue of the evidence required to establish service connection of a hearing loss meeting the regulatory criteria several years after separation from service. *See* 38 C.F.R. § 3.303(a), (b), and (d).

In his response, the Secretary states that section 3.385 does not preclude an award of service connection for a hearing disability established by post-service audiometric and speech-recognition scores, even though hearing was found to be within normal limits on audiometric and speech-recognition testing at the time of separation from service. He asserts that the purpose of section 3.385 is to establish guidelines for determining when a hearing "disability" is present within the meaning of 38 U.S.C.A. § 1110 (West 1991), so that service-connected disability compensation may be awarded, and that, "[r]egardless of when the regulation's threshold criteria are met, a determination must be made as to whether the 'disability' was incurred in or aggravated by service." In describing the evidence necessary to establish service connection when hearing disability is not demonstrated on testing at separation from service, the Secretary states:

[W]here the regulatory threshold requirements for hearing disability are not met until several years after separation from service, the record must include evidence of exposure to disease or injury in service that would adversely affect the auditory system and post-service test results meeting the criteria of 38 C.F.R. § 3.385. VA rating authorities must evaluate available testimony, clinical data, diagnoses, and any medical opinions relevant to the issue. *See* 38 C.F.R. § 3.303 (principles of service connection).... For example, if the record shows (a) acoustic trauma due to significant noise exposure in service and audiometric test results reflecting an upward shift in tested thresholds in service, though still not meeting the requirements for a "disability" under 38 C.F.R. § 3.385, and (b) post-service audiometric testing produces findings meeting the requirements of 38 C.F.R. § 3.385, rating authorities must consider whether there is a medically sound basis to attribute the post-service findings to the injury in service, or whether they are more properly attributable to intercurrent causes.

Appellee's Response at 7–8.

The Court agrees with the Secretary's assertion that section 3.385 does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service. Although that regulation speaks in terms of "service connection", it operates to establish when a measured hearing loss is (or, more accurately, is *not*) a "disability" for which compensation may be paid, provided that the requirements for service connection are otherwise met under 38 U.S.C.A. §§ 1110, 1112 and 38 C.F.R. §§ 3.303, 3.307. *Cf. Cuevas v. Principi,* 3 Vet.App. 542, 548 (1992) ("establishing service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service or some other manifestation of the disability during service"); *Rabideau v. Derwinski,* 2 Vet.App. 141, 143 (1992) ("there must be evidence both of a service-connected disease or inju-

ry and a present disability which is attributable to such disease or injury"). Therefore, when audiometric test results at a veteran's separation from service do not meet the regulatory requirements for establishing a "disability" at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service. As the Court stated in *Godfrey, supra,* where there was no evidence of the veteran's hearing disability until many years after separation from service, "[i]f evidence should sufficiently demonstrate a medical relationship between the veteran's in-service exposure to loud noise and his current disability, it would follow that the veteran incurred an injury in service; the requirements of section 1110 would be satisfied." *See also Cosman, supra* (service connection may be established for psychiatric disorder manifest many years after separation); *Douglas, supra* (same as to carcinoma manifest many years after separation).

Applying this analysis to the instant case, it is clear that section 3.385 does not prohibit an award of service-connected disability compensation for the veteran's bilateral hearing loss. An April 1990 VA audiometric examination revealed threshold hearing levels of 40 dB or more at 4000 Hz in both ears. Section 3.385, as relevant here, prohibits a finding of a hearing disability only where threshold hearing levels at 500, 1000, 2000, 3000, and 4000 Hz "are *all less than* 40 decibels" and at least three of those threshold levels are 25 db or less. 38 C.F.R. § 3.385 (1992) (emphasis added). Where, as here, *any* of the relevant threshold hearing levels are 40 dB or more, a determination as to whether the hearing loss is service connected must be made under the statutory and regulatory provisions governing service connection generally, and the determination of the level of disability due to any such service-connected hearing loss will be made under 38 C.F.R. § 4.85 (1992) ("Evaluation of hearing impairment"). Because application of the governing law and regulation pertaining to service connection yields different analyses with respect to the veteran's left-ear and right-ear hearing losses, it is necessary to discuss those claims separately.

### B. Service Connection for Left-Ear Hearing Loss

Pursuant to the standards in section 3.385, the veteran's hearing in his left ear was outside of normal limits both upon his entrance into and his separation from service, as evidenced by threshold hearing levels of 60 and 70 dB, respectively, at 4000 Hz. Section 3.385 establishes that a "disability" will *not* be found to exist when audiometric scores are within the established limits; it does not by its terms require that a "disability" be *found* to exist whenever audiometric scores are outside of those limits. However, 38 C.F.R. § 4.85, which establishes criteria for evaluating the severity of a service-connected hearing disability, provides for a service-connected disability rating for *any* amount of hearing loss, including where average puretone decibel loss on audiometric examination is between 0–41 dB. 38 C.F.R. § 4.85, Tables VI, VIa, VII (1992). It is thus apparent, in view of sections 3.385 and 4.85, that the veteran's left-ear hearing loss constituted a "disability" at both entrance and separation.

■ Therefore, because the veteran had a hearing disability upon entry into service, his entitlement to service connection for that condition must be predicated on a finding that that condition was aggravated during active service so as to warrant disability compensation under 38 U.S.C.A. §§ 1110 and 1153 (West 1991). *See also* 38 C.F.R. § 3.306(b) (1992). Section 1153 provides:

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C.A. § 1153 (West 1991). Section 3.306(b) further provides, with respect to veterans of wartime service:

Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service. This includes medical facts and principles which may be considered to determine whether the increase is due to the natural progress of the condition.

38 C.F.R. § 3.306(b) (1992). Ratings for disabilities aggravated by service are determined by "deduct[ing] from the present degree of disability the degree, if ascertainable, of the disability existing at the time of entrance into active service, in terms of the rating schedule". 38 C.F.R. § 4.22 (1992). If the degree of disability at the time of entry is not ascertainable in terms of the schedule, "no deduction will be made." *Ibid.*

The veteran's audiometric test results at entrance and separation indicate a 10–decibel decrease in hearing capacity at 4000 Hz during service. R. at 2, 10. In denying service connection for left-ear hearing loss on the basis of aggravation, the BVA stated:

> In acknowledging a reported diminishment of 10 decibels at 4000 Hz in the left ear from testing performed upon induction and at separation from service, this variance is found to be of minimal significance in demonstrating an increase in the severity of any preservice hearing deficit. Moreover, normal findings were noted at the other hertz levels of pertinence to demonstrating hearing loss. Accordingly, the evidence does not reflect an ascertainable hearing loss upon separation from service that could adequately be characterized as reflecting an aggravation, or worsening, of the veterans [sic] preservice hearing capabilities.

*Hensley*, BVA 91–____, at 4. Although this statement is fraught with ambiguity, it appears that the Board concluded that the recorded decrease in hearing ability did not constitute an "increase in disability" during service so as to create a presumption of aggravation under the applicable statutory and regulatory provisions set forth above.

Pursuant to 38 U.S.C.A. § 7104(d)(1) (West 1991), the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991) (*Hatlestad I*); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for rejecting any evidence favorable to the veteran. *See Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Hatlestad I, supra; Gilbert, supra.* Moreover, the Board may not base a decision on its own unsubstantiated medical conclusions but, rather, may reach a medical conclusion only on the basis of independent medical evidence in the record or adequate quotation from recognized medical treatises. *See Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) (*Hatlestad II*); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991); *see also Thurber v. Brown*, 5 Vet. App. 119, 124 (1993) (where BVA intends to rely on medical evidence, it must give claimant notice of such intent and opportunity to respond).

In the instant case, the Board failed to provide any reasons or bases to support the conclusion that the objectively measured worsening of left-ear hearing capacity during service did not constitute an "increase in disability" requiring application of the statutory presumption of aggravation. Specifically, in reaching that cursory conclusion, the Board did not discuss the criteria it used, in terms of the applicable law and regulation, for determining whether there had been an "increase in disability" during service. Because the veteran's service medical records clearly reflect an objectively measurable and measured worsening of hearing during service, the Board was required to determine whether that

worsening constituted an in-service "increase in disability" within the meaning of section 1153, and to provide a statement of reasons or bases, explaining the Board's analysis of all pertinent evidence in the context of all pertinent law and regulation, sufficient to enable the claimant and the Court to understand the "precise basis" for the Board's decision. *Gilbert,* 1 Vet.App. at 56.

Neither the statute nor the regulations set forth the criteria for determining whether a measured worsening of a disease or injury constitutes an "increase in disability" within the meaning of section 1153. In *Hunt v. Derwinski,* this Court held that "[t]he term 'disability' [in section 1153], as contemplated by VA regulations [(38 C.F.R. § 4.1)], means 'impairment in earning capacity resulting from such diseases and injuries and their residual conditions' ", and that the ratings in VA's rating schedule in part 4, title 38, U.S.Code of Federal Regulations, " 'represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations'." *See Hunt v. Derwinski,* 1 Vet.App. 292, 296 (1991) (quoting 38 C.F.R. § 4.1 (1990)). Presumably, then, in instances where VA's rating schedule provides a sufficiently comprehensive basis for determining when any measured worsening of a condition causes a measurable "impairment in earning capacity", application of the rating-schedule provisions to the veteran's measured level of disability at entrance onto and separation from service will determine whether there was an "increase in disability".

However, in *Browder v. Derwinski,* 1 Vet.App. 204, 207 (1991), the Court pointed out that VA's schedule of ratings is designed to establish disability ratings for purposes of paying compensation for disabilities that have already been shown to be service connected, and that the schedule thus may not in all cases provide an adequate basis for determining when a disability has increased in severity for purposes of establishing service connection under section 1153. *See* 38 U.S.C.A. § 1155 (West 1991) (instructing Secretary to establish a schedule for rating disabilities providing "ten grades of disability, and no more, upon which payments of compensation shall be based"). The *Browder* Court thus held that the presumption of aggravation may apply "where there was a worsening of the disability regardless of whether the degree of worsening was enough to warrant compensation", and remanded to the BVA a claim where evidence demonstrated a decrease in the veteran's right-eye visual acuity in service without discussing whether that increase would have been cognizable under VA's rating schedule. *Browder,* 1 Vet.App. at 207.

As noted above, VA's rating schedule is constructed for the purpose of establishing levels of disability for compensation purposes based upon "average impairment in earning capacity" resulting from particular injuries or diseases. 38 U.S.C.A. § 1155 (West 1991). Moreover, although section 1155 directs the Secretary to establish in the rating schedule "ten grades of disability" for evaluating the severity of such conditions, the Secretary has provided less than ten levels of disability for most of the conditions listed in the schedule. *See generally* 38 C.F.R. §§ 4.71a–4.150 (1992). Therefore, the schedular ratings established by the Secretary for compensation purposes may not in all cases provide a sufficiently comprehensive basis for determining when a measured worsening of a particular veteran's condition in service constitutes an "increase in disability" for purposes of establishing service connection through aggravation under section 1153. This would seem to be so where the next higher rating is more than one decile greater.

Furthermore, the rating-schedule provisions may not in all cases provide the most accurate or most logical basis for determining whether there has been an "increase in disability" during service. For example, with respect to organic mental disorders and psychoneurotic disorders, the rating schedule provides for disability ratings based on a finding that the condition causes "total", "severe", "considerable", "definite", or "mild" social and industrial

impairment. *See* 38 C.F.R. § 4.132, Diagnostic Codes 9300–9411 (1992). In determining whether an organic mental disorder or psychoneurotic disorder was aggravated during a veteran's active service many years before, it is certainly reasonable to suppose that evidence may clearly establish that the disability increased in severity during service and caused a decrease in the veteran's earning capacity, although the application of the above-listed adjectives at entry and at separation from service may not be as clear.

█ Based upon the foregoing analysis and the Court's opinions in *Hunt* and *Browder*, the Court holds that the presence of a ratable increase in disability at separation would be conclusive of an in-service increase in disability, but the obverse would not be true; that is, the absence of a ratable in-service increase would not rule out a determination of an increase in disability. Where the rating schedule does not provide a comprehensive basis for a BVA determination as to whether a measured worsening of a preexisting condition *in a particular case* constitutes an "increase in disability" under section 1153, evidence of record might clearly establish that there has been an "increase in disability" for purposes of establishing a presumption of aggravation under section 1153 even though it is not clear that such increase would have resulted in an increased rating under the rating-schedule provisions for that particular disability.

█ Therefore, in adjudicating a claim such as the present one for service connection based on aggravation under section 1153, the Board's reasons or bases must include an explanation of the criteria used by the Board to determine whether a measured worsening of the disability during service constituted an "increase in disability", and an explanation of how those criteria apply to the facts of the particular claim being decided. If the Board determines that application of the rating-schedule criteria is conclusive as to that determination, the Board must explain why it views those rating-schedule criteria as the only adequate basis for making that determination

and must explain how those criteria apply to the veteran's disability as noted at entrance onto and separation from service. If the Board concludes that the rating-schedule provisions do not provide the only adequate basis for determining whether there has been an in-service increase in disability under section 1153 from a particular disease or injury during service, the Board must explain the criteria used to determine whether there has been an "increase in disability" with respect to that condition as well as the resulting evaluation of the evidence under such criteria.

In the instant case, the Board did not explain the criteria it used to determine whether there was an increase in disability from the veteran's left-ear hearing condition during service, and how, pursuant to such criteria, it concluded that the measured decrease in left-ear hearing acuity during service did not demonstrate an "increase in disability" under section 1153. Therefore, remand is required for prompt readjudication and issuance of a decision supported by reasons or bases consistent with this opinion. If on remand the Board concludes that the veteran's left-ear hearing condition did increase in severity during service, the Board must apply the presumption of aggravation and explain whether or not that presumption has been rebutted by clear and unmistakable evidence. *See* 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306(b). If the Board concludes that the presumption is rebutted because the in-service increase in disability was due to the natural progress of the disease, it must point to independent medical evidence or quote recognized medical treatises to provide adequate support for that medical conclusion. *See* 38 U.S.C.A. § 7104(d)(1) (West 1991); *Thurber, supra; Hatlestad II, supra; Colvin, supra.*

### C. Service Connection for Right–Ear Hearing Loss

█ With respect to the veteran's right-ear hearing ability, all reported hearing thresholds were less than 40 dB on audiometric testing at entry and separation and all but one were 25 or less at separation.

Therefore, under the standards established by section 3.385, there was no indication of a right-ear hearing "disability" during service. However, the entrance and separation audiometric scores revealed a decrease in hearing ability of 15–30 dB at all reported Hz levels during service (R. at 2, 10), although audiometric scores sufficient to establish a right-ear hearing disability for which service connection may be awarded consistent with section 3.385 were not reported until the April 1990 VA examination. R. at 25–26.

On the basis of this evidence, the Court finds a plausible basis for the BVA's conclusion that a right-ear hearing disability was not manifested during service or to a 10% degree during the one-year presumption period following service, and, therefore, that conclusion is not subject to reversal as a clearly erroneous finding of fact. *See* 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert*, 1 Vet.App. at 53. However, that finding does not end the inquiry. As noted in part II.A., above, a claimant may establish direct service connection for a hearing disability initially manifest several years after separation from service on the basis of evidence showing that the current hearing loss is causally related to injury or disease suffered in service. *See* 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d); *Godfrey, supra; see also Cosman, supra; Douglas, supra.*

■ In the present case, the evidence supporting a claim of direct service connection for a right-ear hearing disability manifested many years after service includes audiometric test scores showing a 15–30–decibel decline in all recorded threshold hearing levels during service (R. at 2, 10); the veteran's statements that he suffered significant noise exposure working on an aircraft carrier during service (R. at 16, 22, 43, 50–51); the veteran's service separation report indicating his service with an attack squadron (R. at 13, 35); and private physicians' reports stating that the veteran's hearing loss was probably due to noise trauma, including exposure to jet-aircraft noise during service (R. at 31, 34). In light of this evidence, the Board was required to determine whether the veteran's current right-ear hearing disability was causally related to in-service noise exposure. Because the Board failed to address that question, remand is required for adjudication of that direct service connection claim. Moreover, because the veteran has submitted "significant evidence" supporting his claim of service connection for a right-ear hearing disability, the Board must consider and discuss the applicability of the "benefit-of-the-doubt" rule in 38 U.S.C.A. § 5107(b) (West 1991) in determining whether the evidence establishes entitlement to service-connected disability compensation. *See Williams (Willie) v. Brown*, 4 Vet.App. 270, 273–74 (1993) ("where there is significant evidence in support of an appellant's claim, as there is here, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise"); *Gilbert*, 1 Vet.App. at 54.

### III.  Conclusion

Based upon the foregoing opinion, the Court denies the Secretary's ill-advised motion for summary affirmance, vacates the March 13, 1991, BVA decision, and remands the matter to the Board for prompt readjudication, consistent with this opinion, on the basis of all evidence of record and all applicable provisions of law and regulation. *See* 38 U.S.C.A. § 7104(a) (West 1991); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). "On remand, the appellant will be free to submit additional evidence and argument". *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED.