Citation Nr: 1452647 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 11-02 986 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office Center in Wichita, Kansas


THE ISSUES

1. Entitlement to service connection for left ear hearing loss.

2. Entitlement to service connection for right ear hearing loss.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

R. Casadei, Associate Counsel




INTRODUCTION

The Veteran had active duty service from September 1983 to September 1991. 

This matter came before the Board of Veterans' Appeals (Board) on appeal from a December 2009 rating decision of the Wichita, Kansas, Medical and Regional Office Center (RO) which, in pertinent part, denied service connection for bilateral hearing loss. This appeal was processed using the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. In evaluating this case, the Board has also reviewed the "Virtual VA" system to ensure a complete assessment of the evidence.

The issues on appeal (previously characterized as service connection for bilateral hearing loss) were previously remanded by the Board in April 2014 in order to provide the RO an opportunity to consider newly submitted evidence. For the reasons discussed in detail below, the appeal is again REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.

REMAND

The Veteran asserts that service connection for bilateral hearing loss is warranted as the claimed disability was incurred secondary to his in-service noise exposure. The accredited representative states that the Veteran was afforded an inadequate VA audiological evaluation in November 2009 and requests that the Veteran's appeal be remanded to the RO so that the Veteran could be afforded an additional VA audiological evaluation. See October 2014 Informal Hearing Presentation.

In regard to the Veteran's left ear hearing loss disorder, the Board finds that the Veteran had a pre-existing left ear disability prior to entry into service in September 1983. Impaired hearing is considered a disability for VA compensation purposes when the auditory threshold in any of the frequencies of 500, 1,000, 2,000, 3,000, or 4,000 Hertz is 40 decibels or greater; the thresholds for at least three of these frequencies are 26 or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2014). See also Hensley v. Brown, 5 Vet. App. 155, 157 (1993) (holding that the threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss). 

In the April 1983 service entrance examination, puretone thresholds at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the left ear were 10, 15, 10, 40, and 45, respectively, with an average puretone threshold of 24 decibels. 
In a subsequent January 1985 report of medical examination (physical examination), the in-service audiologist noted that the Veteran had decreased acuity in the left ear for approximately two to three years "before entry into service." Further, the in-service audiologist noted that puretone thresholds at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the left ear were 15, 20, 20, 55, and 55 respectively, with an average puretone threshold of 33 decibels. 

As the Veteran had auditory threshold of two frequencies (3,000 and 4,000 Hertz) of 40 decibels or greater in the left ear at service entrance, the Board finds that he had a pre-existing left ear disability prior to entry into service. Thus, the presumption of sound condition at service entrance does not attach with respect to the Veteran's left ear, and his claim of entitlement to service connection for left ear hearing loss is one for aggravation. See Crowe v. Brown, 7 Vet. App. 238, 245 (1994); 38 C.F.R. § 3.304(b) (2014). See also Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004); 38 C.F.R. § 3.306 (2014).

The Veteran's service separation examination report in May 1991 reflects a decrease in left ear hearing acuity at 3000 and 4000 Hertz. Specifically, puretone thresholds at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the left ear were 10, 20, 15, 55, and 60 respectively, with an average puretone threshold of 32 decibels.

The Veteran was afforded a VA audiology examination in November 2009. The examiner diagnosed the Veteran with sensorineural left ear hearing loss. The examiner then opined that the Veteran's left ear hearing loss was less likely than not permanently aggravated by in-service acoustic trauma. In support of this opinion, the VA examiner reasoned that the Veteran's entrance examination in 
1983 revealed a mild to moderately-severe hearing loss in the left ear at 3000- 
6000 Hz. At service separation in 1991, the Veteran's left ear did not show 
"significant aggravation at 3000-6000 Hz." The Veteran reported recreational noise exposure of hunting prior to entering the service and reported that he was right handed and had greater noise exposure to his left ear. The examiner further stated that the Veteran's military occupational specialty (MOS) did not "concede acoustic trauma and he denies engaging in any combat." When evaluating his current degree of loss, the examiner noted that "one cannot rule out contributions from his current civilian occupation that requires participation in the hearing conservation program and aging." 

The Board finds the November 2009 VA medical opinion to be inadequate. Although the Veteran's MOS as a supply clerk may not necessarily "concede" acoustic trauma in service, the Veteran has consistently maintained, to include during the November 2009 VA examination, that he was exposed to gunfire and aircraft noise while in service. The Board finds that the VA examiner did not adequately consider the Veteran's statements regarding in-service noise exposure. 

Further, in March 2014, the Veteran submitted a lay statement from L.W., a retired Non-Commission Officer in Charge that served at the same time as the Veteran. L.W. stated that the facility where the Veteran was stationed was approximately 100 yards from the air strip where aircrafts took off and landed all day. The noise level was intense and regularly hurt the ears. L.W. noted that the men were given ear protection; however, due to the intensity of the noise, L.W. stated that they were not very helpful. The Board finds that the Veteran's statements and those made by L.W. to be credible. Accordingly, the Board finds that the Veteran was exposed to acoustic trauma in service. As the November 2009 VA examiner did not have an opportunity to view this evidence, the Board finds that a new VA examination is warranted.

Further, the November 2009 VA examiner also discussed the Veteran's noise exposure prior to service and after service separation in support of the finding that the Veteran's hearing loss was not aggravated during service. This discussion by the VA examiner regarding pre-service and post-service noise exposure does not address the question of permanent worsening during service. Further, although the examiner stated that a shift of 15 decibels in 3000 and 4000 Hertz was not "significant aggravation," the Veteran is not required to show "significant" aggravation, but only a "permanent worsening beyond the natural progression of the condition." See 38 C.F.R. § 3.306. 

For these reasons, the Board finds that a new VA examination is required in order to assist in determining whether there is clear and unmistakable evidence that the Veteran's pre-existing left ear hearing loss disability was not aggravated beyond its natural progression during service. 

In regard to the Veteran's right ear hearing loss disorder, the Board finds that the Veteran did not have a pre-existing right ear hearing loss disability prior to entry into service. In the April 1983 service entrance examination, a right ear hearing loss disorder was not noted and puretone thresholds at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the right ear were 5, 15, 5, 0 and 0, respectively, with an average puretone threshold of 5 decibels. See Hensley, 5 Vet. App. at 157. Accordingly, the presumption of sound condition at service entrance attaches with respect to the Veteran's right ear. 

The Veteran currently has a right ear hearing loss disability for VA compensation purposes. During the November 2009 VA examination report, puretone thresholds at the test frequencies of 500, 1000, 2000, 3000, and 4000 Hertz in the right ear were 20, 25, 15, 25, 40 respectively, with an average puretone threshold of 25 decibels. As the Veteran's auditory threshold in the 4,000 Hertz frequency was 40 decibels, the Veteran meets the criteria for impaired hearing under 38 C.F.R. 
§ 3.385.

As noted above, the Veteran was afforded a VA examination in November 2009; however, the VA examiner only addressed the question of aggravation and did not opine as to whether the Veteran's right ear hearing loss was incurred in or was otherwise related to service. Accordingly, a new VA examination is warranted. 
Accordingly, the case is REMANDED for the following actions:

1. The RO/AMC should obtain any updated VA treatment records and should associate them with the record. 

2. Then, schedule the Veteran for a VA audiological examination. The claims folder and a copy of this remand must be made available to and reviewed by the examiner prior to completion of the examination. All necessary testing should be conducted. 

The examiner is asked to address the following: 

(a) Whether there is clear and unmistakable evidence that the Veteran's pre-existing left ear hearing loss disability was not aggravated beyond its natural progression from September 1983 to September 1991. The examiner should assume that the Veteran was exposed to acoustic trauma during service.

Note: Aggravation connotes a permanent worsening above the base level of disability, not merely acute and transitory increases in symptoms or complaints.

(b) Whether it is at least as likely as not (50 percent or greater probability) that the Veteran's currently diagnosed right ear hearing loss disorder was incurred in or is otherwise related to service, to include the in-service acoustic trauma. 

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but that the medical evidence for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

All examination findings, along with rationale for all opinions expressed, should be set forth in the examination report.

3. Then, readjudicate the issues on appeal. If the benefits sought remain denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case and given the opportunity to respond thereto.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
K. J. ALIBRANDO
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).