BARTLEY, Judge,
joining in part, concurring in part, and dissenting in part:
I dissent from part I of the decision to the extent that the majority concludes that “Mr. McKinney had a preexisting hearing loss that was ‘noted’ ” on his entry examination report. Ante at 23-24. Although I agree with my esteemed colleagues as to part I’s ultimate conclusion that Mr. McKinney did not demonstrate a hearing defect, infirmity, or disorder upon entry to service, there is no need to address the meaning of those terms because the naval examiner at the time of the veteran’s entry in 1969 did not note any hearing issue whatsoever, let alone hearing loss, and the appeal should be decided on that basis.[16] Section 1111 of title 38, U.S.Code, imposes a requirement that veterans are presumed sound except as to any defect, infirmity, or disorder “noted at the time of the examination, acceptance, and enrollment” into service. 38 U.S.C. § 1111 (emphasis added); see 38 C.F.R. § 3.304(b) (2015) (implementing regulation). Because that temporal requirement was not met in Mr. McKinney’s case, he should be presumed sound on that basis, rendering most of the Court’s part I analysis unnecessary.
The crux of my disagreement stems from the majority’s willingness to accept audiology test results from Mr. McKinney’s January 1969 entry examination, which were never interpreted by the entry examiner as indicating a hearing issue, as a notation for purposes of section 1111. Indeed, in order to conclude that hearing loss was noted at entry, the Board and the majority rely on a May 2011 VA opinion rendered 42 years after Mr. McKinney’s service entry, as well as on hearing loss standards referenced in Hensley v. Brown, 5 Vet.App. 155, 157 (1993), a case decided 24 years after Mr. McKinney’s service entry. The majority acknowledges that the naval examiner did not list ears or hearing in the section of the entry examination report reserved for noting “Defects and Diagnoses,” did not otherwise comment on the audiology test results, and did not indicate that he believed that the veteran’s hearing was compromised in any way. R. at 896-97; see ante at 24 (majority concedes that “the naval examiner did not note defective hearing” (emphasis added)). Instead, the naval examiner assigned Mr. McKinney a PULHES score of 1 for hearing and ears, R. at 897, indicating the highest level of fitness for that category, see ante at 19-20. Relying on post-entry examination interpretation to find that Mr. McKinney had hearing loss at entry is contrary to the statute.
*38 Given the 1969 examiner’s silence as to the veteran’s hearing, it is not possible now for VA to discern the interpretation or significance the entry examiner attached to Mr. McKinney’s audiology results. Nevertheless, the Board and the majority sanction using information from 2011 and 1993 without acknowledging the section 1111 and § 3.304(b) temporal requirement that should bar retrospective interpretation of an entry examination in this manner. Ante at 23-24; see 38 U.S.C. § 1111.
Contrary to the majority’s suggestion, ante at 23-24, Hensley did not relax or otherwise abrogate this requirement. Unlike Mr. McKinney, Mr. Hensley received a defective hearing diagnosis upon entry into service, 5 Vet.App. at 156-57, and there was no need in that case for retrospective interpretation, and, unsurprisingly, the Court in Hensley did not discuss section llll’s and § 3.304(b)’s noting requirement. Accordingly, the Board and the majority’s reliance here on Hensley is misplaced.
Permitting retrospective interpretation of an entry examination allows VA to transform a test result not identified at the time of entry as out of the ordinary into noting at the time of entry, thereby perverting the statutory requirement. This retrospective interpretation will create troubling effects: Men and women entering service would be deemed fully fit to fight and die, with the entry examiner indicating nothing preexisting; but after service those men and women, now veterans, would be informed that they were less than whole at entry, that there was preexistence, and that they have a significant handicap in pursuing disability benefits, i.e., the presumption of soundness, in most cases, would not apply.
I would hold that no noting of any kind relating to Mr. McKinney’s hearing occurred at entry and that such absence reflects that the veteran’s hearing was deemed by the 1969 naval examiner to be completely unremarkable at entry. On that basis, Mr. McKinney should be presumed sound as to his hearing. VA is not without recourse where an entry examiner fails to note a preexisting issue at the time of entry, as may happen from time to time. Any such failure is amply provided for in the statute—in such cases VA may present clear and unmistakable evidence to rebut the presumption that the veteran was sound at entry. See 38 U.S.C. § 1111 (authorizing VA to rebut the presumption of soundness “where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service”); H.R. Rep. No. 78-403, at 2 (1943) (indicating that the presumption of soundness must be rebuttable because defects, infirmities, or disorders are sometimes “necessarily [] overlooked due to the speed with which persons are taken into service during a war emergency” (emphasis added)); May 13, 1913 Hearing Before the H. Comm. on World War Veterans Legislation, 78th Cong. 54 (1943) (recognizing that “neglect on the part of the doctors” performing military entry examinations under “the stress of building up manpower” necessitated making the presumption of soundness rebuttable). Accordingly, I must respectfully dissent from the majority’s analysis in part I of its decision.

. I join with the analysis and restdt in part II of the decision as to the veteran's respiratory disability,