﻿Citation Nr: AXXXXXXXX
Decision Date: 07/31/20 Archive Date: 07/31/20

DOCKET NO. 191107-46236
DATE: July 31, 2020

ORDER

Entitlement to service connection for bilateral hearing loss is denied.

REMANDED

Entitlement to service connection for a right knee disorder is remanded.

Entitlement to service connection for a right ankle disorder, including as secondary to a right knee disorder is remanded.

FINDING OF FACT

The Veteran’s current bilateral sensorineural hearing did not begin in service, become manifest to compensable degree within a year of separation from service, and is not related to noise exposure from service.

CONCLUSION OF LAW

The criteria for service connection for bilateral sensorineural hearing loss have not been met. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the U.S. Air Force from August 1958 to February 1960.

A rating decision was issued under the legacy system in February 2019, denying service connection for bilateral hearing loss, a right knee disorder and a right ankle disorder; and the Veteran submitted a timely notice of disagreement. In October 2019, the agency of original jurisdiction (AOJ) issued a statement of the case (SOC). The Veteran opted the claims into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a November 2019 VA Form 10182, Decision Review Request: Board Appeal, identifying the October 2019 SOC. Therefore, the October 2019 SOC is the decision on appeal. 

In the November 2019 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Hearing docket. Therefore, the Board may only consider the evidence of record at the time of the October 2019 SOC, as well as any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a).

The Veteran testified at a Board videoconference hearing in March 2020, before the undersigned Veterans Law Judge (VLJ). A transcript is of record. At the time of the hearing, the Veteran’s representative referred to a VA hearing loss examination conducted proximate in time to the Board hearing and expressed a desire for the Board to consider such evidence. On review of the record, the Board has identified a January 2020 VA examination, but this evidence lies outside the applicable evidentiary window for the Hearing docket, since it was not of record at the time of the October 2019 SOC and a copy of the examination report was not submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a). 

1. Entitlement to service connection for bilateral hearing loss

The Veteran contends his current bilateral hearing loss was caused by military noise exposure from working on and flying in KC97 aircraft. See January 2019 VA audiology examination report.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection for hearing loss may be granted where there is credible evidence of acoustic trauma due to significant noise exposure in service, post-service audiometric findings meeting regulatory requirements for hearing loss disability for VA purposes (i.e., 38 C.F.R. § 3.385 ), and a medically sound basis upon which to attribute the post-service findings to the injury in service, as opposed to intercurrent causes. Hensley v. Brown, 5 Vet. App. 155, 159 (1993). The threshold for normal hearing is from zero to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley, 5 Vet. App. at 157.

Where the evidence shows a “chronic disease” in service or “continuity of symptoms” after service, the disease shall be presumed to have been incurred in service. 38 C.F.R. § 3.303 (b). The option of establishing service connection through a demonstration of continuity of symptomatology rather than through a finding of nexus is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309 (a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be granted for chronic disabilities if such is shown to have been manifested to a compensable degree within one year after the Veteran was separated from service. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.307, 3.309(a). Organic diseases of the nervous system, including sensorineural hearing loss, are listed as chronic conditions under 38 C.F.R. § 3.309 (a). See Fountain v. McDonald, 27 Vet. App. 258, 271 (2015).

At the outset, the Board finds that the criteria for entitlement to service connection on a presumptive basis have not been met. The record does not show bilateral sensorineural hearing loss manifested to a compensable degree (10 percent) within a year following separation from service, that is, by February 1961. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

The Board also finds that the evidence does not show that the Veteran’s hearing loss began in service or is in any way related to service or any event of service. The January 2019 VA examiner diagnosed bilateral sensorineural hearing loss and objective audiometric and speech discrimination testing by the examiner confirms the hearing loss is considered a disability for VA purposes. 38 C.F.R. § 3.385. 

However, a review of his service treatment records is unremarkable for complaint, treatment or diagnosis of any bilateral hearing loss disability. For instance, the Veteran’s July 1958 entrance examination and February 1960 separation examination show clinical evaluation of his ears was normal and he had a 15/15 whispered voice test bilaterally.

August 1958 and December 1959 hearing conservation tests and the February 1960 service separation examination, but not the entrance examination, included audiometry results. Prior to 1967, American Standards Association (ASA) standards were used to test hearing. In light of the above, and where necessary to facilitate data comparison for VA purposes in the decision below, including under 38 C.F.R. § 3.385, audiometric data originally recorded using ASA standards will be converted to ISO-ANSI standard by adding between 5 and 15 decibels to the recorded data as follows:

Hertz 250 500 1000 2000 3000 4000 6000 8000

add 15 15 10 10 10 5 10 10

At his August 1958 service hearing conservation evaluation, the pure tone thresholds were as following, with ISO-ANSI standards given in parentheses:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT -5 (10dB) -5 (5dB) -5 (5dB) -5 (5dB) -5 (0dB)

LEFT -5 (10dB) -5 (5dB) -5 (5dB) -5 (5dB) -5 (0dB)

At his December 1959 service hearing conservation evaluation, the pure tone thresholds were as following, with ISO-ANSI standards given in parentheses:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT -5 (10dB) -5 (5dB) -5 (5dB) -5 (5dB) 0 (5dB)

LEFT -5 (10dB) -5 (5dB) -5 (5dB) -5 (5dB) 0 (5dB)

At his February 1960 service separation examination, the pure tone thresholds were as following, with ISO-ANSI standards given in parentheses:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 0 (15dB) 0 (10dB) 0 (10dB) 0 (10dB) 0 (5dB)

LEFT 0 (15dB) 0 (10dB) 0 (10dB) 0 (10dB) 0 (5dB)

These in-service test results do not establish the onset of a hearing loss disability during service. See 38 C.F.R. § 3.385.

The Board acknowledges that the Veteran’s DD Form 214 shows a military occupational specialty of reciprocating engine mechanic during service, which is consistent with his contention that he experienced military noise exposure from such duties. The Board finds the Veteran had in-service noise exposure, which is consistent with the places, types, and circumstances of his service. 38 U.S.C. § 1154 (a); 38 C.F.R. § 3.303 (a).

Nonetheless, while accepting the Veteran’s contention of military noise exposure, the probative and persuasive evidence fails to relate his in-service military noise exposure to his current bilateral sensorineural hearing loss. Rather, the January 2019 VA examiner provides a highly probative opinion that weighs against the Veteran’s claim. 

The January 2019 VA examiner opined, “Entrance WV [(whispered voice)] test was “normal” and separation audiogram showed hearing thresholds all within normal limits bilaterally. Veteran reports onset of hearing decrease as post-separation after exposure to recreational noise. Although noise exposure is conceded and the relationship between noise, auditory damage, and hearing loss is well documented, auditory damage and hearing loss are not conceded based on noise alone. There is no evidence to support a nexus to relate current hearing loss to military noise [and] not another etiology. Therefore, it is less likely as not that the current hearing loss is related to military noise exposure.” Thus, the Board finds the VA examiner’s opinion is highly probative evidence against the hearing loss claim, given the VA examiner’s clear conclusion, review of the claims file, personal interview of the Veteran, audiometric testing, and discussion of the rationale of the opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (“It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion.”). At this time, the Board acknowledges that whisper tests were unreliable; however, in this case, the contemporaneous audiogram reports confirm that the Veteran had normal hearing in service.

As discussed, the Board has accepted the Veteran’s assertion that he had in-service noise exposure. However, the Veteran has not provided any other discernible lay statements in support of his claim, so there is no need to discuss their competency, credibility and probative value in support of his claim. 

The Board concludes the probative and persuasive evidence does not support the claim of entitlement to service connection for bilateral sensorineural hearing loss, and there is no reasonable doubt to apply. The appeal is denied. 

REASONS FOR REMAND

1. Entitlement to service connection for a right knee disorder.

2. Entitlement to service connection for a right ankle disorder, including as secondary to a right knee disorder.

The Veteran testified that his present right knee disability is related to an in-service right knee injury, and he has had right knee problems since service. He asserts that when he was an Air Force crew chief on KC-97 aircraft, and was up on a ladder repairing an aircraft and slipped and fell and twisted his leg while on the engine stand. He denied that his right knee disability was due to a football injury before entering service, in contrast to the history indicated by his February 1960 medical discharge examination. See March 2020 hearing transcript.

On the Board’s review of the service treatment and personnel records, the Board observes the Veteran was discharged in February 1960 due to a physical disability. His July 1958 entrance examination did not note any pre-existing right knee disabilities. Service treatment records from June 1959 to December 1959 show complaints of and treatment for “water on the knee” and contusion of the knee. The records also show that the Veteran was treated in early February 1960 for injury to his right knee, involving a slip and fall a few days earlier, in late January 1960. Subsequently, a February 1960 Air Force Medical Board report found the Veteran had a pre-existing right knee disability from an October 1957 pre-service football injury, but found that it was not incurred in service and not aggravated by service. The Medical Board report identified a pre-existing right knee medial meniscus tear, from October 1957, or prior to service entry.

The January 2019 VA examiner diagnosed the Veteran with right knee degenerative arthritis, and proceeded to provide a negative medical opinion against the possibility that his right knee was related to service on a direct basis, reasoning that “there is not sufficient evidence to support a connection between his service related knee pain and current knee conditions without resorting to mere speculation.” However, the examiner did not offer an opinion on whether the Veteran had a pre-existing disability, and if so, whether it was aggravated by service. Thus, this was an error in the duty-to-assist, as the January 2019 VA examiner’s opinion report did not respond to the appropriate legal theory of entitlement, thereby rendering the opinion inadequate for resolving the right knee claim. Inadequate medical examinations include examinations that contain only data and conclusions, do not provide an etiological opinion, are not based upon a review of medical records, or provide unsupported conclusions. Nieves- Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

The Board finds a remand is necessary to resolve the duty-to-assist error that occurred prior to the Agency of Original Jurisdiction (AOJ) decision on appeal, for the AOJ to provide a VA addendum medical opinion. Such additional development will help properly adjudicate the claim.

The Veteran also testified that his right knee disorder caused his right ankle disorder. The right ankle claim is inextricably intertwined with the right knee claim, so that further consideration of secondary service-connection for the right ankle claim must be deferred pending development of the service-connection claim for a right knee disorder.

The matters are REMANDED for the following action:

1. Obtain a VA addendum medical opinion from an appropriate VA clinician on the Veteran’s diagnosed right knee degenerative arthritis. The examiner should indicate that the record was reviewed. If the examiner determines that another in-person examination of the Veteran is required to provide the below-requested information, then such an examination should be scheduled. On review of the record, the VA examiner should be asked to answer the following:

(a) whether there is clear and unmistakable (i.e., undebatable) evidence that that the Veteran’s current right knee disability pre-existed his entry into in service, in August 1958; and 

(b) if a pre-existing right knee disability is found, whether there is clear and unmistakable (i.e., undebatable) evidence that the right knee disability was not aggravated by active military service from August 1958 to February 1960?

(c) if a pre-existing right knee disability is not found, whether it is at least as likely as not (i.e., at least a 50 percent probability) that the current right knee disorder is in any way related to service or any event of service?

The examiner should provide a complete rationale for all opinions rendered. In providing the requested rationale, the examiner must reconcile such opinion with the Veteran’s competent lay statements on the history of his right knee problems. If the examiner cannot provide an opinion without resorting to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

2. Defer readjudication of the claim for secondary service connection for a right ankle disorders, pending the above development and readjudication of the right knee claim.

 

 

C. CRAWFORD

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Biswajit Chatterjee, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.