Citation Nr: 1714075 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-42 127 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to an evaluation in excess of 10 percent for a stress fracture of the right distal fibula.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Veteran and B. H.



ATTORNEY FOR THE BOARD

J. R. Hines, Associate Counsel


INTRODUCTION

The Veteran had active service from January 1969 to January 1971.

This matter comes before the Board of Veterans' Appeals (Board) from March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office RO in Nashville, Tennessee.

The Veteran testified before the undersigned Veterans Law Judge at a videoconference hearing in September 2013. A transcript is of record. 

In February 2014 and in December 2014, the appeal was remanded for additional development. 

The issue of entitlement to an increased evaluation for a stress fracture to the right distal fibula is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Bilateral hearing loss is at least as likely as not related to military service.


CONCLUSION OF LAW

The criteria for service connection for a bilateral hearing loss disability have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A (West 2015); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran contends that he has a bilateral hearing loss disability due to exposure to loud noise while serving as an assistant drill sergeant in the armor unit. During his September 2013 hearing, he indicated that he was responsible for issuing weapons for basic trainees to fire in the field. He also explained that training with the troops included exposure to grenades, firing M-16s or M-14s, and foxhole firing. He stated that he earned a sharpshooter badge by completing various firing exercises and that he performed these tasks without ear plugs. He asserted that his hearing progressively worsened after service.

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 

Where a veteran served continuously for 90 days or more during a period of war, and sensorineural hearing loss becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2015); 38 C.F.R. §§ 3.307, 3.309 (2016). 

For the disease explicitly recognized as "chronic" under 38 C.F.R. § 3.309 (a), the provisions of 38 C.F.R. § 3.303 (b) provide an alternative method of establishing the second and third elements through a demonstration of continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Sensorineural hearing loss is a chronic disease enumerated in 38 C.F.R. § 3.309 (a). See Fountain v. McDonald, 27 Vet. App. 258 (2015). Therefore, the theory of chronicity and continuity of symptomatology under 38 C.F.R. § 3.303 (b) is applicable in this case. 

For purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; when the auditory thresholds for at least three of the above frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

When audiometric test results at a Veteran's separation from service do not meet the regulatory requirements for establishing a disability at that time, he or she may nevertheless establish service connection for a current hearing disability by submitting evidence that the current disability is causally related to service. See Hensley v. Brown, 5 Vet. App. 155, 160 (1993). The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Id. 

The Veteran's DD Form 214 demonstrates that his military occupational specialty was a stock clerk in the armor unit. 

Service treatment records are absent any documentation of in-service complaints of, or treatment for, hearing loss. In July 1968, during an enlistment examination, the Veteran was tested for hearing loss. Audiological testing showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
-5
0
0
0
-5
LEFT
-10
0
5
-5
25

At a November 1970 exit examination, the Veteran was tested for hearing loss. Audiological testing showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10 
10
10
--
10
LEFT
10
10
10
--
10

In February 2010, the Veteran underwent a VA-contracted audiology examination at which he reported in-service exposure to daily rifle fire without hearing protection devices. He also reported that his hearing loss began around 1972; a year after separation from service. Audiological testing showed pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
15
45
80
80
95
LEFT
20
35
60
80
85

Speech audiometry using the Maryland CNC word list revealed speech recognition ability of 82 percent in the right ear and 84 percent in the left ear. The examiner diagnosed bilateral sensorineural hearing loss. The examiner opined that it was less likely as not that the hearing loss was caused by or as a result of his military noise exposure. The rationale was that the Veteran had normal hearing at the time of separation from the service and after service worked for 31 years in hazardous noise levels monitored by OSHA.

At the September 2013 hearing, the Veteran indicated that he experienced symptoms of hearing loss during service and that it continued after service. He denied excessive noise exposure in his post-service occupation in a plant for 31 years. His wife, also a former employee of the plant, corroborated his testimony as to the level of noise exposure there. She also testified that over the 21 years that she has known the Veteran; he has experienced hearing loss.

The Board remanded the appeal in February 2014 for another VA examination and opinion which considered the Veteran's testimony that he did not have excessive post-service occupational noise exposure.

At the subsequent VA examination in April 2014, a VA examiner opined that it was less likely as not (less than 50/50 probability) that the Veteran's hearing loss was caused by or a result of military noise exposure. The examiner indicated that delayed-onset hearing loss due to noise exposure is unlikely. The examiner further explained that per the Institute of Medicine (2006), there is not sufficient evidence from longitudinal studies in laboratory animals or humans to determine whether permanent noise-induced hearing loss can develop much later in one's lifetime, long after the cessation of that noise exposure [however] based on the anatomical and physiological data available on the recovery process following noise exposure, it is unlikely that such delayed effects occur. The examiner further explained that the Veteran had a normal hearing sensitivity at both the enlistment and separation exams with no significant threshold shifts. 

In December 2014, the Board remanded the claim for a clarifying addendum. The Board noted that in providing the nexus opinion, the examiner compared the enlistment and separation audiograms and found significant threshold shifts at 500 and 4000 HERTZ. However, in the rationale for the unfavorable opinion the examiner stated that there was no significant shift in either ear when comparing the enlistment and separation audiogram. 

In April 2015, the same examiner prepared an addendum after reviewing the claims file again. The examiner noted that the Veteran's post-service occupational noise exposure included working in a factory for 31 years and working for the sheriff's department for 8 years and hearing protection was used. Recreational noise exposure was denied. 

The examiner clarified her opinion regarding the right ear by indicating that the Veteran had demonstrated a normal right ear hearing at both the enlistment and separation examinations. The examiner also indicated that during active duty service, the Veteran experienced a significant threshold shift within the range of normal at 2000 Hz; and this shift was still evident at the National Guard enlistment examination in December 1973. The examiner noted that a significant shift in the high frequency range may be consistent with a noise injury and based on the Veteran's reported history of military noise exposure he would likely have been exposed to noise levels adequate to cause such a shift in hearing loss. The examiner further noted that based on the objective evidence found in the service treatment records along with the rationale discussed above, the right ear hearing loss is at least as likely as not caused by or a result of military noise exposure. 

As it relates to the left ear, the examiner indicated that the Veteran's hearing was normal at separation with no significant threshold shifts having occurred during active duty service; and there is no evidence that the Veteran's military noise exposure caused a permanent noise injury affecting hearing sensitivity. The examiner further stated that the Veteran's current left ear hearing loss is deemed less likely as not (less than 50/50 probability) caused by or a result of military noise exposure.

The Veteran's reported history of military noise exposure is credible. The circumstances of his military service are consistent with the noise exposure he has attested to having therein. See 38 U.S.C.A. § 1154 (a) (West 2015). The February 2010 VA examination report establishes a current bilateral sensorineural hearing loss disability. See 38 C.F.R. § 3.385. The question remaining then is whether the evidence establishes a causal connection between the current hearing loss and the Veteran's in-service noise exposure. 

The Board has considered the probative evidence of record, including the Veteran's competent and credible assertions concerning his in-service noise exposure and hearing loss symptomatology and, the medical evidence. 

With respect to the right ear, the April 2015 VA opinion provides sufficient evidence of a causal nexus between the right ear hearing loss and military service. There is no persuasive evidence against the claim in this regard, as the February 2010 and April 2014 VA opinions were previously found to be inadequate for the reasons already discussed. Accordingly, service connection for right ear hearing loss disability is warranted.

With respect to the left ear, the Board notes that a left ear sensorineural hearing loss disability was not affirmatively shown to have been manifested in service or to a compensable degree within one year of discharge. 38 C.F.R. § 3.303(a), 3.307, 3.309. 

In addition, the medical evidence of record does not support a causal relationship between the Veteran's left ear hearing loss and military service. The April 2015 VA opinion was not favorable on the question of causal nexus. The examiner's opinion was supported by a fully-explained rationale and was based on an accurate depiction of the Veteran's in-service and post-service history and therefore is probative. The February 2010 and April 2014 VA opinions are also unfavorable but were previously found inadequate for the reasons already discussed. 

However, the Board has also considered entitlement to service connection for left ear sensorineural hearing loss under a theory of chronicity and continuity. See 38 C.F.R. § 3.303 (b). In this respect, the Veteran reports that hearing loss was noted in service. At the September 2013 hearing, the Veteran indicated that he noticed some hearing loss during service, especially after coming off the firing range and it continued after service, becoming progressively worse. The Veteran is competent to establish the presence of hearing loss in service and continuity thereafter. The Board finds his testimony relatively credible in this regard. See Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013); Layno v. Brown, 6 Vet. App. 465, 470 (1994). His wife also reported knowledge of his hearing loss for at least as long as she has known him. 

The unfavorable 2015 VA opinion and the Veteran's competent, credible testimony regarding continuity of symptomatology place the matter of causal nexus in relative equipoise. Resolving all reasonable doubt in favor of the Veteran, the criteria for service connection for left ear sensorineural hearing loss have been met. Therefore, service connection for a bilateral hearing loss disability is warranted. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).


ORDER

Service connection for a bilateral sensorineural hearing loss disability is granted.


REMAND

Additional development is necessary prior to appellate review of the claim for a higher rating for the service-connected stress fracture of the right distal fibula. This disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5262 (impairment of the tibia and fibula).

The United States Court of Appeals for Veterans Claims (Court) has recently held that to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing described in the final sentence of 38 C.F.R. § 4.59. Thirty-eight C.F.R. § 4.59 (2016) states that "[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." See Correia v. McDonald, 28 Vet. App. 158 (2016). As such, range of motion testing in passive and active motion, as well as in weight-bearing and nonweight-bearing conditions, is now required to adequately evaluate the Veteran's right ankle disability. 

The VA ankle examination in March 2015 did not include an assessment of pain upon both active and passive range of motion, and in weight bearing and non-weight bearing. In addition, although the examiner indicated pain caused additional functional loss upon flare-up and with repetitive use over time - he did not express functional loss in degrees of additional range of motion lost during flare-ups and after repetition. These findings are required by VA regulations as interpreted by courts. See Mitchell v. Shineski, 25 Vet. App. 32, 43 (2011) and DeLuca v. Brown, 8 Vet. App. 202 (1995). Thus, the Veteran must be afforded a new examination that includes all necessary information discussed above.

On remand the file should be updated with any relevant VA treatment records since March 2015.

Accordingly, the case is REMANDED for the following action:

1. Update the file with relevant VA treatment records since March 2015.

2. Schedule the Veteran for a VA examination to assess the severity of his right ankle disability. The examiner must review the claims file and address the following:

a) The examiner should provide the ranges of motion of the Veteran's service-connected right ankle as well as his undamaged, left ankle. The examiner should indicate whether pain is present during both passive and active motion, as well as in weight-bearing and nonweight-bearing conditions. For active and passive range of motion testing, it should also be indicated whether, and at what point during the range of motion the Veteran experiences any limitation of motion that is specifically attributable to pain. 

These findings are required by VA regulations as interpreted by courts. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so. 

b) The examiner should also indicate whether, and to what extent, there is likely to be additional functional loss or impairment due to pain, weakness, easy fatigability, incoordination, or during flare-ups and with repetitive use over time. The additional functional impairment should be expressed in terms of the degree of additional range of motion lost. The examiner is also asked to specifically indicate whether, due to any additional functional loss, the Veteran's right ankle disability more closely approximates moderate or marked impairment of the fibula.

These findings are required by VA regulations as interpreted by courts. If it is not possible to provide the requested ranges of motion and/or opinions on additional functional impairment/loss without resort to speculation, the examiner must explain why this is so.

3. Finally, readjudicate the appeal. If the benefits sought are not granted in full, issue a supplemental statement of the case and provide the Veteran and his representative an opportunity to respond. The case should thereafter be returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
D. JOHNSON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs