Citation Nr: 1755090 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 11-06 961 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for allergic rhinitis.

3. Entitlement to an initial compensable rating for acne prior to August 2, 2014, and in excess of 30 percent disabling from August 2, 2014.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

A. Purcell, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 2004 to January 2008. 

This appeal to the Board of Veterans' Appeals (Board) arose from a June 2008 rating decision of a Department of Veterans' Affairs (VA) Regional Office (RO) in Baltimore, Maryland. 

The Veteran appeared at a Board hearing in February 2014 at the Board's Offices in Washington, DC, before the undersigned. A transcript is associated with the claims file.

In May 2014 and January 2017, the Board remanded this matter for further development. 

As noted in the prior Board remands, the issues of entitlement to service connection for PTSD, low back pain, chronic sinusitis, and whether new and material evidence has been received to reopen a claim of entitlement to service connection for residuals of right tibia stress fracture have been raised by the record, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them. Although documentation in the claims file reflects the AOJ started development of the claims, there is no rating decision of record. Thus, they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2017).


FINDINGS OF FACT

1. The Veteran does not have current hearing loss disability for VA purposes.

2. The Veteran's allergic rhinitis clearly and unmistakably pre-existed service and clearly and unmistakably was not aggravated by service beyond its natural progression.

3. Throughout the appeal period, the Veteran's acne disability has been manifested by flares of superficial acne with residual pitted scarring on the bilateral cheeks manifested by two characteristics of disfigurement.


CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss disability have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2017).

2. The criteria for service connection for allergic rhinitis have not been met. 38 U.S.C. §§ 1110, 1111, 1153, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.306 (2017).

3. Resolving all doubt in favor of the Veteran, the criteria for an initial 30 percent rating, and no higher, for the Veteran's acne disability have been met since January 22, 2008, the effective date of service connection. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.7, 4.118, Diagnostic Codes (DCs) 7800, 7828 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection Claims

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

In McClain v. Nicholson, 21 Vet. App. 319, 321 (2007), the Court held that the requirement of the existence of a current disability is satisfied when a claimant has a disability at the time he files his claim for service connection or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim. In Romanowsky v. Shinseki, 26 Vet. App. 289 (2013), the Court held that when the record contains a recent diagnosis of disability prior to a claimant filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence of a current disability existed at the time the claim was filed or during its pendency. 

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic diseases, such as organic diseases of the nervous system, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Sensorineural hearing loss is considered an organic disease of the nervous system and, therefore, benefits from the provisions of 38 C.F.R. § 3.307 concerning presumptive service connection for chronic disabilities.

For chronic diseases, a nexus to service may be demonstrated by showing a continuity of symptomatology between an in-service disease or injury and a current disability. 38 C.F.R. § 3.303(b); cf. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Every Veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. See 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). 

If a condition is not noted upon entrance into service, then to rebut the presumption of soundness at service entrance VA must show by clear and unmistakable evidence both that there was a pre-existing condition and that it was not aggravated during or by the Veteran's service. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004); VAOPGCPREC 3-2003 (July 16, 2003). To satisfy this second-prong requirement for rebutting the presumption of soundness, the government must show by clear and unmistakable evidence either that there was no increase in disability during service or that any increase in disability was due to the natural progression of the condition. Joyce v. Nicholson, 443 F.3d 845, 847 (Fed. Cir. 2006).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Service Connection for Bilateral Hearing Loss

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). 

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The preponderance of the evidence is against the Veteran's claim of service connection for bilateral hearing loss as the first element of service connection, a current hearing loss disability, has not been shown.

During the February 2014 Board hearing, the Veteran testified that he was told that he had right ear hearing loss upon separation from service. Hearing Tr., p. 17. He testified that friends and family members have to speak louder when they are speaking to him from his right side. Hearing Tr., p. 19.

The Veteran's January 2004 service entrance audiometric evaluation shows the Veteran exhibited pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
0
-5
0
-5
-10
LEFT
5
0
0
5
0

The Veteran's October 2007 in-service audiometric evaluation shows the Veteran exhibited pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
25
35
30
30
LEFT
15
20
30
35
20

The Veteran's first follow up November 2007 audiometric evaluation shows the Veteran exhibited pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
5
5
25
5
5
LEFT
15
5
15
15
5

The Veteran's second follow up November 2007 audiometric evaluation shows the Veteran exhibited pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
5
5
20
5
15
LEFT
10
5
10
10
5

The Veteran separated from service in January 2008.

An April 2012 Defense Occupational and Environmental Health Readiness (DOEHRS) audiogram shows the Veteran exhibited pure tone thresholds, in decibels, as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
5
0
0
5
5
LEFT
-5
-5
0
5
-5

A VA audiological examination was obtained in August 2014. Pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
10
10
15
10
LEFT
15
10
15
10
10

Speech audiometry revealed speech recognition ability of 96 percent in both ears. The VA examiner noted that the Veteran presented with normal bilateral hearing at the examination. The VA examiner explained that review of the Veteran's entrance and separation examinations showed significant shifts in thresholds, although both revealed normal hearing bilaterally, and that these threshold shifts resolved. The VA examiner noted that the April 2012 DOEHRS examination was also within normal limits.

The Board observes that at no time during the pendency of the claim has the Veteran's bilateral hearing loss met VA's criteria for a hearing loss disability, i.e., auditory thresholds such that at least one of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or speech recognition is less than 94 percent. 38 C.F.R. § 3.385. 

The Board must adhere to the guidelines of 38 C.F.R. § 3.385, which do not provide for a finding of a current disability if pure tone thresholds or speech recognition scores fail to meet the required minimum thresholds. 

The Board notes that the Veteran reported that he was told that he had right ear hearing loss upon separation from service. The October 2007 in-service audiological examination shows right ear hearing loss. However, the November 2007 audiological examinations do not show hearing loss sufficient for VA purposes. The August 2014 VA examiner recognized some threshold shifts in service, but found that the Veteran had normal hearing bilaterally upon separation from service. The Veteran separated from service in January 2008 and filed his claim the same month. The August 2014 VA examiner noted normal hearing at the time of separation, and again in April 2012, and again in August 2014. There are no other audiological evaluations conducted during the claims period in the file. The evidence does not show a current hearing loss disability for VA purposes within the claims period. 

The Veteran, as a lay person, is competent to report the symptoms of hearing loss; but he is not competent to say that he has hearing loss that meets the specific criteria in § 3.385. In this regard, such a diagnosis requires the administration and interpretation of audiological test results. As such this is a complex medical question, and the Veteran is not competent to offer a diagnosis of bilateral hearing loss disability for VA purposes. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). 

Absent any evidence showing a current hearing loss disability as defined by VA, the preponderance of the evidence is against the grant of service connection for bilateral hearing loss. 

In reaching such decision, the Board has considered the applicability of the benefit of the doubt doctrine. Because the preponderance of the evidence is against the claim, reasonable doubt does not arise and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.

Service Connection for Allergic Rhinitis

As the Veteran's December 2003 entrance examination noted no allergic rhinitis disorder, he is presumed to have been sound at entry into service. 38 U.S.C.A. § 1111. Only conditions recorded in examination reports are to be considered noted for purposes of the presumption of soundness. 38 C.F.R. § 3.304(b). Accordingly, service connection is warranted unless the Veteran's allergic rhinitis clearly and unmistakably pre-existed service and clearly and unmistakably was not aggravated by service. 

The Veteran's December 2003 report of medical history notes sinusitis, with the explanation "nasal congestion, summer, uses symptomatic meds, no sinus x-rays."

In a January 2004 dental health questionnaire, the Veteran reported a history of sinus problems. A handwritten notation states within normal limits.

A February 2004 service treatment record (STR) notes congestion when the Veteran sought treatment for a sore throat and viral syndrome.

An April 2004 STR notes a diagnosis of seasonal allergies. The Veteran was given Benadryl.

An April 2004 STR notes the Veteran had nausea, dizziness, cough, congestion, diarrhea and other symptoms and was diagnosed with likely viral gastroenteritis.

In a July 2004 report of medical history, the Veteran reported sinus problems mostly at night.

A September 2004 STR diagnosed the Veteran with a sore throat and related symptoms and gave the Veteran Afrin nasal spray, among other things.

A May 2005 STR shows the Veteran was diagnosed with allergic rhinitis and given Claritin. The clinician indicated the Veteran should follow up as needed.

A September 2006 STR shows the Veteran reported for cold symptoms. The Veteran reported three days of diarrhea, throat soreness, sinus congestion, and minimal cough with fevers or chills. The Veteran was diagnosed with acute sinusitis and infectious gastroenteritis and given Deconamine for the sinusitis.

An April 2007 STR notes congestion when the Veteran was diagnosed with viral gastroenteritis. Sudafed was provided for congestion along with medications and instructions to treat the Veteran's other symptoms.

In an October 2007 report of medical history, the Veteran reported sinusitis. The Veteran explained that he had sinus problems occasionally but used nasal spray for relief. The examiner noted that congestion was relieved with nasal sprays.

In his January 2008 claim, the Veteran reported that his allergic rhinitis started in January 2004.

The Veteran underwent VA examination in February 2008. The Veteran reported that he was unaware of a diagnosis of allergic rhinitis but he occasionally needs to blow his nose a lot secondary to rhinorrhea. He estimated that he had nasal interference with breathing approximately once a week. He denied any history of chronic sinus infections or any problems with chronic sinusitis, neoplasm of the nose, sinus, larynx, or pharynx, or dyspnea related to nasal congestion. Upon examination, nasal passages were negative for obstruction and polyps. Sinuses were without tenderness. Oropharynx was within normal limits. The VA examiner diagnosed rhinitis with no history of chronic sinusitis and noted that x-rays were negative. The February 2008 sinus x-rays showed no evidence for opacification of the paranasal sinuses and no focal abnormalities.

In his February 2011 substantive appeal, the Veteran reported that he still experienced nasal blockage.
 
During the February 2014 Board hearing, the Veteran testified that he experienced stuffiness at night. Hearing Tr., p. 14. He testified that he was told to use nasal drops and used a humidifier at night. Hearing Tr., p. 15. He testified that he was told he has sinusitis. He has been treating it on his own. Hearing Tr., p. 16.

The Veteran underwent VA examination in August 2014 in relation to his claim for service connection for allergic rhinitis. The VA examiner diagnosed the Veteran with allergic rhinitis with an onset date of 2003, before service. The VA examiner found no evidence of any sinusitis. The VA examiner noted that the Veteran reported problems with nasal congestion and post drainage before service, especially at night, and that he continued to have the same problem during and after service without worsening beyond the natural progression. The Veteran went to the doctor as needed and would receive medication and nasal spray. The Veteran reported that he still has the same symptoms and takes over-the-counter medication as needed. The VA examiner noted that the Veteran's 2008 x-rays showed that his sinuses were clear and that there was no history of any chronic sinus problem. 

The August 2014 VA examiner provided a new examination in April 2017. The Veteran again reported that he had allergic rhinitis for about a year prior to service and had taken over-the-counter medication. He reported that it had worsened when he was stationed in California for service. He was given Zyrtek and Flonase in 2004, and continued to use these medications. 

The examiner opined that clear and unmistakable evidence showed that the Veteran's allergic rhinitis pre-existed service. The VA examiner explained that the Veteran himself reported that this condition pre-existed service and reported his symptoms of nasal congestion and using over-the-counter medications to treat such symptoms. The VA examiner also opined that the Veteran's condition was not aggravated beyond its natural progression by service. The VA examiner explained that the Veteran's pre-service symptoms continued during service. The VA examiner explained that the condition may have needed more or less medication or different medication but that is simply the natural progression of the disease and it is a medical fact. 

Viewing the evidence as a whole, the Board finds clear and unmistakable evidence that the Veteran's allergic rhinitis pre-existed service. The Veteran has consistently reported problems with nasal congestion, and the use of medications to treat symptoms, prior to service. See December 2003 Report of Medical History; August 2014 and April 2017 VA Examinations; see also January 2004 Dental Health Questionnaire. At the April 2017 VA examination, the Veteran reported that he had allergic rhinitis in 2003, a year prior to service. The April 2017 VA examiner opined that the Veteran's own testimony was the best evidence. 

The April 2017 VA examiner reviewed the record, interviewed the Veteran in 2014 and 2017, examined the Veteran in 2014 and 2017, noted the continuity of the Veteran's symptoms starting prior to service, and opined that clear and unmistakable evidence showed that the Veteran's allergic rhinitis pre-existed service. The Board notes that the VA examiner's opinion is in accord with the Veteran's own lay statements and the record as a whole. Accordingly, after considering the lay and medical evidence in the record, the Board finds clear and unmistakable evidence that the Veteran's allergic rhinitis pre-existed service. 

The Board also finds clear and unmistakable evidence that the Veteran's allergic rhinitis was not aggravated by service. Although the Veteran asserts that his condition worsened in service, he has reported that his symptoms and treatment remained essentially the same. Prior to service, the Veteran reported nasal congestion, particularly in the summer, and the use of medications to address symptoms. The Veteran's seasonal allergies were noted again a few months into service. See April 2004 STR. 

During and after service, the Veteran continued to report nasal congestion and use of medications as needed. The Veteran notes that he was placed on Zyrtek and Flonase during service, but the April 2017 VA examiner explained that such a change in medication did not signal a worsening of the condition. The VA examiner explained that the Veteran's pre-service condition simply continued in service. The VA examiner further explained the Veteran may have needed more or less medication or different medication but that was simply part of the allergic rhinitis and did not show worsening beyond the natural progression. The VA examiner stated that such a conclusion was a medical fact. 

While the Veteran is competent to report his symptoms and his treatment, he is not competent to state whether his medical condition worsened beyond the natural progression of the disease. The Board has considered the Veteran's competent and credible statements regarding symptoms and treatment. However, the Board finds the VA examiner's opinion regarding the lack of worsening beyond the natural progression of the disease to be much more probative than the Veteran's subjective complaints of worsening. 

The VA examiner's opinion is in accord with the evidence as a whole, including the Veteran's STRs and his statements. The Veteran's STRs show a general continuity in the severity of his symptoms, and are consistent with his reports of pre-service symptoms. Both before and during service, the Veteran reported nasal congestion, which he treated as needed. Accordingly, after considering the lay and medical evidence in the record, the Board finds clear and unmistakable evidence that the Veteran's allergic rhinitis was not aggravated by service.

As the evidence shows that the Veteran's allergic rhinitis clearly and unmistakably pre-existed service and clearly and unmistakably was not aggravated by service, the presumption of soundness has been rebutted and the Veteran's claim for service connection for allergic rhinitis is denied.



Initial Rating for Acne

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. In general, it is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

The Board may consider whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999). When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

The Veteran's acne has been assigned a disability rating under 38 C.F.R. § 4.118, Diagnostic Code (DC) 7828-7800. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. The additional code is shown after a hyphen. 38 C.F.R. § 4.27. The Veteran's acne has been assigned a noncompensable rating from the date of service connection, January 22, 2008, and a 30 percent rating from August 2, 2014. 

Under DC 7828, a noncompensable rating is warranted for superficial acne (comedones, papules, pustules, superficial cysts) of any extent. A 10 percent rating is warranted for deep acne (deep inflamed nodules and pus-filled cysts) affecting less than 40 percent of the face and neck, or deep acne other than on the face and neck. A 30 percent rating is warranted for deep acne affecting 40 percent or more of the face and neck. DC 7828 also allows for rating acne as a disfigurement of the head, face or neck or scars, depending upon the predominant disability. 

Under DC 7800, disfigurement of the head, face or neck may be based, in part, upon the following eight specified characteristics of disfigurement: (1) a scar five or more inches (13 or more centimeters) in length; (2) a scar of at least one-fourth of an inch (0.6 centimeters) wide at its widest part; (3) surface contour of the scar elevated or depressed on palpation; (4) a scar adherent to underlying tissue; (5) skin hypo- or hyper-pigmented in an area exceeding six square inches (39 square centimeters); (6) abnormal skin texture (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches (39 square centimeters); (7) underlying soft tissue missing in an area exceeding six square inches (39 square centimeters); and/or (8) skin indurated and inflexible in an area exceeding six square inches (39 square centimeters). 38 C.F.R. § 4.118, DC 7800, Note (1).

A 10 percent evaluation is warranted where there is evidence of one characteristic of disfigurement of the head, face, or neck. A 30 percent rating is warranted for visible or palpable tissue loss and either gross distortion or asymmetry of one feature of a paired set of features (i.e., the nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips or, in the alternative, two or three of the aforementioned characteristics of disfigurement. A 50 percent rating is warranted when there is visible or palpable tissue loss and either gross distortion or asymmetry of two features or paired sets of features, or; with four or five characteristics of disfigurement. An 80 percent rating is warranted when there is visible or palpable tissue loss and either gross distortion or asymmetry of three or more features or paired sets of features, or; with six or more characteristics of disfigurement. 

DC 7801 provides the rating criteria for scars not of the head, face, or neck that are deep and nonlinear, providing a 10 percent rating for areas of at least six square inches. DC 7802 provides the criteria for scars not of the head, face, or neck that are superficial and nonlinear, again providing a compensable rating for areas of 144 square inches or greater. Finally, DC 7804 provides for unstable or painful scars. 

During service, in September 2006, the Veteran reported that he started to develop scarring on his bilateral cheeks. See September 2006 STR. In an October 2007 report of medical history, the Veteran reported acne with occasional major breakouts accompanied with blackheads and scars. The November 2007 separation examiner noted recurrent acne since November 2006.

The Veteran separated from service in January 2008, and filed his claim for service connection for acne the same month.

The Veteran underwent VA examination in February 2008. The Veteran reported that he was diagnosed with facial acne in service and treated with Retin A and benzoyl peroxide. He was treated with Accutane in 2007. He noted improvement with Accutane, and reported continued use of Retin A and benzoyl peroxide. He denied any functional impairment from the acne. Upon examination, the VA examiner noted no evidence of active acneiform dermatitis. The VA examiner noted mild scarring, less than 1 percent of total body surface area and less than 5 percent of exposed body surface area. The VA examiner did not opine as to the location, size, or other characteristics of disfigurement or scarring.

A September 2008 VA treatment record shows that the Veteran presented with a history of acne, had been on Accutane for 6 or 7 months until January, and since stopping the medication had gotten some papules with post-inflammatory hyperpigmentation. The clinician noted residual acne scars. 

An October 2008 VA treatment record notes a few slightly hyperpigmented macules on the Veteran's cheeks, a few erythematous papules, and no pustules.

A December 2008 VA treatment record notes significant improvement with treatment, with a diagnosis of acne with post-inflammatory hyperpigmentation.

A May 2009 VA treatment record notes a flare of acne, with erythematous papules and pustules on the Veteran's right cheek and chin as well as hyperpigmented macules on the same areas.

An October 2009 VA treatment record notes the Veteran's report that he does not have many acne outbreaks but his concern is hyperpigmentation. The dermatologist noted hyperpigmented patches and a few superficial scars on the Veteran's cheeks.

A January 2010 VA treatment record notes the Veteran requested to be placed on Accutane as he felt the current medications were not working for him. The Veteran was diagnosed with inflammatory papulopustular acne, with open and closed comedones and a few pustules on the Veteran's cheeks and chin. The dermatologist notes that the Veteran was not a candidate for Accutane based on the clinical lack of nodulocystic acne.

A February 2010 VA treatment record notes inflammatory papulopustular acne and the Veteran reported improvement. 

The record shows the Veteran was placed on Accutane for his acne and treated by a private dermatologist from May 2011 to February 2012.

During the February 2014 Board hearing, the Veteran testified that he has been using topical creams and that he has been seeing a dermatologist since service. Hearing Tr., p. 3. He testified that he has scarring on his cheeks where he had acne in service. Hearing Tr. p. 3. He testified that his condition had worsened.

The Veteran underwent further VA examination in August 2014. The VA examiner recognized that the Veteran has a long-standing history of cystic acne with residual scarring of the face dating back to 2004. The VA examiner noted the Veteran's history of multiple and oral medications, including erythromycin and tetracylines with 2 courses of Accutane in 2007 and 2012. The VA examiner noted moderate diffuse acne of the face with residual pitted scars on the Veteran's cheeks. The VA examiner noted the scarring covered a 4 x 4 centimeter area of each cheek, a total of 32 square centimeters. There was no elevation, depression, adherence to underlying tissue, or missing underlying soft tissue. There was abnormal texture as the scars were pitted. 

The examiner found no gross distortion or asymmetry of facial features or visible or palpable tissue loss. The VA examiner found no painful or unstable scars of the head, face, or neck. The VA examiner found no scars of the head, face, or neck resulting in limitation of function. The VA examiner noted no treatment with oral or topical medications or other treatments or procedures in the past 12 months for exfoliative dermatitis or papulosquamous disorders. The VA examiner found superficial acne affecting 40 percent or more of the Veteran's face or neck and scattered acneform papules diffusely of the cheeks involving 45 percent of the face. The VA examiner opined that the Veteran's scarring did not impact his ability to work.

In a January 2017 remand, the Board noted an unaddressed February 2008 photograph of the Veteran and directed the RO to obtain an addendum opinion to determine whether the Veteran had any scar or other disfigurement of the head, face, or neck prior to August 2, 2014.

In a February 2017 addendum, a VA medical opinion provider addressed a February 2008 photo of the Veteran. The VA opinion provider opined that the Veteran had no additional scars other than those identified by the August 2014 VA examiner.

Viewing the evidence as a whole, and resolving all reasonable doubt in favor of the Veteran, the Board finds that the Veteran's acne disability warrants a 30 percent rating for the entire appeal period. The Board notes that DC 7828 allows for rating acne under that code or as a disfigurement of the head, face or neck or scars, depending upon the predominant disability. Here, the Veteran's acne has been described as superficial which warrants a noncompensable rating under DC 7828. However, the Veteran has residual pitted scarring on his bilateral cheeks from his facial acne. See August 2014 VA Examination Report. The VA examiner measured the scarring on each cheek as 4 centimeters wide. 

The Veteran testified that he has had such scarring since service, and the February 2008 VA examination report and other medical records show evidence of scarring. Thus, resolving all reasonable doubt in favor of the Veteran, the Board finds that the Veteran has had scarring on his cheeks constituting two characteristics of disfigurement (two scars each more than 0.6 centimeters wide) throughout the appeal period. Accordingly, a 30 percent rating is warranted under DC 7800 from January 22, 2008, the effective date of service connection.

However, a rating in excess of 30 percent is not warranted. Visible or palpable tissue loss and either gross distortion or asymmetry of two features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips) is not shown. The evidence also does not show four or five characteristics of disfigurement. The criteria for a rating greater than 30 percent under DC 7800 thus have not been met or approximated at any point during the appeal period. Higher or separate ratings are also not warranted under DC 7801, 7802, or 7804. The Veteran does not have unstable or painful scars or scars on regions other than the head, face, or neck.










 (CONTINUED ON NEXT PAGE)
ORDER

Service connection for bilateral hearing loss is denied.

Service connection for allergic rhinitis is denied.

Entitlement to an initial 30 percent rating, effective the date of service connection, is granted.



____________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs