Citation Nr: 1829853 
Decision Date: 09/10/18 Archive Date: 09/24/18

DOCKET NO. 14-27 260 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss disability.

2. Entitlement to service connection for otitis media.

3. Entitlement to service connection for sinusitis.


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse



ATTORNEY FOR THE BOARD

Brandon A. Williams, Associate Counsel


INTRODUCTION

The Veteran had active military service from January 1962 until January 1965.

These matters come before the Board of Veterans' Appeals (Board) on appeal from May 2012 and September 2013 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

In February 2016 the Veteran and his spouse presented testimony before the undersigned Veterans Law Judge. A copy of the transcript is of record. The claims were remanded by the Board in July 2016 for further development.

The issues of entitlement to sinusitis and otitis media are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's bilateral hearing loss disability is etiologically related to an in-service injury, event, or disease.



CONCLUSION OF LAW

The criteria for service connection for bilateral hearing loss disability have been met.38 U.S.C. § 1101, 1110, 1131, 1154, (West 2014); 38 C.F.R. § 3.303, 3.304, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Entitlement to service connection for bilateral hearing loss disability

The Veteran contends that he has bilateral hearing loss related to his military service.

To prevail on a direct service connection claim, there must be competent evidence of (1) a current disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 U.S.C. § 1110, 1131; 38 C.F.R. § 3.303 (a).

The question for the Board is whether the Veteran has bilateral hearing loss that is etiologically related to, or aggravated by, an in-service disease or injury.

The Board finds that competent, credible, and probative evidence establishes that the Veteran's bilateral hearing loss is etiologically related to the Veteran's active service.

An essential element of a claim for service connection is evidence of a current disability. An October 2016 VA examination report revealed that pure tone thresholds, in decibels, were as follows:






HERTZ



500
1000
2000
3000
4000
RIGHT
95
75
55
85
95
LEFT
60
60
50
65
50

The Veteran's speech recognition score was 62 percent for the right ear and 80 percent for the left ear. Based on the foregoing, the Veteran has a current bilateral hearing loss disability for VA purposes; thus, an essential element has been met. 38 C.F.R. § 3.385. 

While on active duty, the Veteran served as a communications center specialist, but also was awarded the parachutist badge and underwent basic combat training. The Veteran has asserted that he experienced acoustic trauma during his active service. Specifically, the Veteran has alleged acoustic trauma due to noise exposure while firing his military weapon.

The Veteran's STRs reflect a couple of notable audiograms during the Veteran's military service. 

The first is an audiogram was conducted in June 1962. The Veteran's June 1962 examination reflected the following results: 





HERTZ



500
1000
2000
3000
4000
RIGHT
15
15
15
X
40
LEFT
15
15
15
X
40

The Board notes that in the 1960's, the military changed its standard of measuring hearing acuity. The American Standards Association (ASA) units were replaced with the current International Standards Organization (ISO) units. The Veteran's report of medical examination occurred in June 1962; this is prior to the time the military was assumed to change standards. To convert the units, the Board adds 15 decibels to 250 Hz., 15 decibels to 500 Hz, 10 decibels to 1,000 Hz, 10 decibels to 2000 Hz, 10 decibels to 3,000 Hz., and 5 decibels to 4,000 Hz. The Veteran's 1962 examination converted to the ISO standard reflects the following:





HERTZ



500
1000
2000
3000
4000
RIGHT
30
25
25
X
45
LEFT
30
25
25
X
45

In Hensley v. Brown, 5 Vet.App. 155, 157 (1993) the Court held that the threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Therefore, the Veteran's June 1962 examination report reflects that the Veteran's bilateral hearing was outside normal limits and in fact met the standards for VA hearing loss disability. 38 C.F.R. § 3.385.

The Board notes that, once hearing loss is shown in service, the remaining questions in such a case are whether the veteran has a hearing loss disability currently which meets the standard for a current "disability" set by VA for service connection purposes in 38 C.F.R. § 3.385 and, if so, whether it can be said that the hearing loss shown in service was a chronic disability that still exists today.

The second notable in service audiogram was performed just prior to the Veteran's separation from service in January 1965. The audiogram reflected the following:





HERTZ



500
1000
2000
3000
4000
RIGHT
10
10
10
X
10
LEFT
10
10
10
X
10

The following reflects the Veteran's January 1965 audiogram converted to the ISO standard:






HERTZ



500
1000
2000
3000
4000
RIGHT
25
20
20
X
15
LEFT
25
20
20
X
15

The Veteran was provided a VA medical examination in October 2016. The examiner noted the Veteran with bilateral mixed hearing loss that meet the standards of 38 C.F.R. § 3.385. The examiner concluded that the Veteran's current bilateral hearing loss disability is not at least as likely as not caused by or a result of an event in military service. The examiner noted the Veteran's in-service audiograms; however, the examiner failed to convert the audiograms to ISO standards. Thus, relying on inaccurate findings, the examiner incorrectly concluded that the Veteran's January 1965 audiogram revealed normal hearing sensitivity bilaterally. As previously explained, the Court held that the threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet.App. 155, 157 (1993). Thus, the properly converted the January 1965 audiogram indicated the Veteran with some, albeit small, degree of hearing loss upon separating from active military service. 

In a private opinion date in May 2012, Dr. G.L.B. opined that the Veteran's case was complex because the Veteran had conductive hearing loss most likely from otosclerosis, but also has sensorineural component on the right side which is more likely secondary to extensive military noise exposure in the past.

The claims folder also includes another private opinion dated in March 2016 from Dr. J.M.R., in which the physician opined that at least some portion of the Veteran's hearing loss is related to his military service. In providing the medical opinion, Dr. J.M.R. reviewed the records, including the 1962 in-service audiogram, and described the Veteran as an Army Paratrooper in Vietnam. Dr. R. noted a history of loud noise exposure during the Veteran's years of service which he felt assisted in the development of sensorineural hearing loss. Although the service personnel records do not reflect that the Veteran served in Vietnam, he was awarded the Parachutist Badge. 

Another private opinion in November 2016 noted that "[a]fter review of medical records, examination of the patient, and discussion with the patient, I feel it is at least as likely as not that his hearing loss was caused by or a result of an event in military service." The provider, Dr. R D. Au.D., explained that the Veteran had an MOS that was known to be around excessive amounts of noise exposure without HPD which can cause damage and that the Veteran "experienced noted barotrauma in the service from jumping out of planes." It was also explained that the Veteran was service-connected for tinnitus and "tinnitus can be a side effect of hearing loss before it is seen on the audiogram."

In considering the private and VA medical opinions; the Veteran's STRs; and the Veteran's lay statements of hearing loss; the Board finds that the Veteran's bilateral hearing loss disability is at least as likely as not at least partially related to his active military service. In addition, it is at least as likely as not that current bilateral hearing loss is the same chronic hearing loss shown on the 1962 audiometric report in service.

In light of the Veteran's confirmed in-service incurrence, the objective clinical medical evidence, and his credible and competent statements in support of the claim, the Board finds that the evidence is at least in equipoise regarding service connection for bilateral hearing loss disability and will resolve any reasonable doubt in favor of the Veteran. See 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). All the elements necessary for establishing service connection are met and the Veteran's claim for service connection for bilateral hearing loss disability is granted.


ORDER

Entitlement to service connection for bilateral hearing loss disability is granted.



REMAND

In the July 2016 remand, the Board concluded that the February 2016 private opinion in regard to the Veteran's claims for service connection for sinusitis and otitis media was inadequate. Additionally, the Board instructed the RO to obtain a VA medical examination and opinion on the claimed conditions. The Veteran was provided a VA examination in October 2016. The examiner opined that the Veteran's claimed otitis media and sinusitis was less likely than not incurred in or caused by his military service. In support of the provided medical conclusion, the examiner stated that the Veteran's STRs do not indicate that the Veteran was seen or treated for complaints of ear or sinus problems during service or one year after service. Additionally, the examiner disagreed with the Veteran's testimony of experiencing ear infections due to his military assignments. For the reasons below, the Board finds that supplemental opinions on the remaining issues are necessary.

The October 2016 examiner's conclusion was based, in part, on the incorrect fact that the Veteran's STRs are silent for complaint of, or treatment for, ear of sinus problems. However, a review of the STRs reflects what appears to be an annotation of external otitis. (See July 1963 Chronological Record of Medical Care). This annotation helps support the Veteran's assertion of an in-service occurrence. As the October 2016 medical opinion was based, at least in part, on inaccurate facts, it has no probative value in regard to the claim. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). As such, the Board finds the October 2016 opinion to be inadequate and of no probative value. Since October 2016 medical opinion is based on incorrect facts and does not provide adequate rationale for the conclusion reached a supplemental comment is needed. See Barr v. Nicholson, 21 Vet. App. 303 (2007) (when VA endeavors to provide an examination for a service-connection claim, even if not statutorily obligated to, it must ensure the examination is adequate, else, notify the Veteran why such an examination will not or cannot be provided).

Additionally, in providing the medical opinion, the October 2016 examiner failed to account for the Veteran's competent lay statements regarding the onset of his sinus and chronic ear condition and the presence of symptoms since that time. While lay persons are generally not competent to offer evidence which requires medical knowledge, such as opinions regarding medical causation or a diagnosis, they may provide competent testimony as to observable symptoms and manifestations of a disorder. Layno v. Brown, 6 Vet. App. 465, 469 (1994); Barr v. Nicholson, 21 Vet. App. 303 (2007); Buchanan v. Nicolson, 451 F. 3d 1331 (Fed. Cir. 2006). A veteran can attest to factual matters of which he had had first-hand knowledge, e.g., pain within the ear. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). A remand by the Board confers on claimants, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). It imposes upon VA a concomitant duty to ensure compliance with the terms of the remand. Based on the above, the Board finds that a supplemental medical opinion provided after the claims folder is reviewed is required.

Accordingly, the case is REMANDED for the following action:

1. Please obtain all updated VA and non-VA treatment records with respect to the issues remaining on appeal.

2. Schedule the Veteran for an appropriate VA examination to determine the current nature and likely etiology of any ear infection, including otitis media. The claims folder must be made available to the examiner for review.

Based on the examination and review of the record, the examiner should address the following question:

Is it as at least as likely as not (50 percent or higher degree of probability) that any current ear infection, including otitis media, was incurred in or aggravated by military service? Please consider and discuss the STR reflecting external otitis in July 1963, the private medical opinion dated February 2016 from the Allergy, Asthma, and Sinus center and the Veteran's testimony of experiencing ear infections due to his military service.

A clear rationale for all opinions is necessary -to include providing citations to pertinent factual findings-and a discussion of the medical principles involved would be of considerable assistance to the Board. If an opinion cannot be provided without resorting to mere speculation, the VA examiner should discuss why an opinion is not possible.

3. Schedule the Veteran for an appropriate VA examination to determine the current nature and likely etiology of sinusitis. The claims folder must be made available to the examiner for review.

Based on the examination and review of the record, the examiner should address the following question:

Is it as at least as likely as not (50 percent or higher degree of probability) that any current sinusitis was incurred in or aggravated by military service? Please consider and discuss the private medical opinion dated February 2016 from the Allergy, Asthma, and Sinus center and the Veteran's testimony of experiencing sinus problems due to his military service.

A clear rationale for all opinions is necessary -to include providing citations to pertinent factual findings-and a discussion of the medical principles involved would be of considerable assistance to the Board. If an opinion cannot be provided without resorting to mere speculation, the VA examiner should discuss why an opinion is not possible.

4. Following the completion of the foregoing, and after undertaking any other development deemed necessary, readjudicate the claims on appeal. If any benefit sought on appeal remains denied, provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate period of time for response. Thereafter, the appeal should be returned to the Board for further appellate review, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C§§ 5109B, 7112 (West 2014).




______________________________________________
M.C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs