﻿Citation Nr: AXXXXXXXX
Decision Date: 02/13/19 Archive Date: 02/13/19

DOCKET NO. 180926-459
DATE: February 13, 2019

ORDER

Service connection for bilateral hearing loss is granted.

Service connection for tinnitus is granted.

FINDINGS OF FACT

1. Resolving all doubt in the Veteran’s favor, his bilateral hearing loss is related to his in-service noise exposure.

2. Resolving all doubt in favor of the Veteran, his currently diagnosed tinnitus had its onset during his military service.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for bilateral hearing loss are met. 38 U.S.C. §§ 1101, 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385. 

2. The criteria for entitlement to service connection for tinnitus have been met. 38 U.S.C. §§ 1101, 1110, 1112, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from July 1971 to July 1973. In June 2016, the Veteran had an informal hearing before the Decision Review Officer. The conference report is associated with the record. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form in May 2018. Accordingly, the September 2018 RAMP rating decision considered the evidence of record as of the date of the RAMP election. The Veteran timely appealed this RAMP rating decision to the Board and requested the evidence submission lane, which allowed him 90 days to submit additional evidence. In this regard, additional evidence received within 90 days was duplicative of the evidence previously considered by the Agency of Original Jurisdiction (AOJ). 

The new and material evidence issue regarding bilateral hearing loss has been recharacterized because relevant official service department records were associated to the record after the September 2005 legacy rating decision. 38 C.F.R. § 3.156(c). In this regard, subsequent to the September 2005 legacy rating decision, the Veteran’s service personnel records were received in March 2016. Such includes documentation of the Veteran’s April 1971 pre-induction examination, to specifically include audiological testing. However, the September 2005 legacy rating decision noted that, evidence considered at the time of the decision consisted of service medical records from November 2, 1971 to May 29, 1973. Therefore, as such is relevant to the instant case, the Board finds that 38 C.F.R. § 3.156 (c) is applicable and his original May 25, 2005, claim is reviewed on a de novo basis. 

SERVICE CONNECTION

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff’d, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

Additionally, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as organic diseases of the nervous system, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. In Fountain v. McDonald, 27 Vet. App. 258 (2015), the Federal Circuit held that where there is an allegation of acoustic trauma, tinnitus is an organic disease of the nervous system and, therefore, a chronic disease subject to presumptive service connection.

Alternatively, when a disease at 38 C.F.R. § 3.309 (a) is not shown to be chronic during service or the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303 (b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309 (a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

1. Service connection for bilateral hearing loss.

The Veteran contends that his basic military training consisted of throwing hand grenades and firing M-16 rifles. Following his basic military training, he reports that he was stationed in Germany and his military occupational specialty (MOS) was a welder within an artillery unit. He further contends that his ears suffered acoustic trauma on a daily basis because he had used a gas welder without ear protection, which was very loud. He believes that his hearing became impaired during his tour in Germany and has continued since such time. Furthermore, he reports that his hearing loss was noticed by others in his unit and his family members. 

The threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 157 (1993). For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The United States Court of Appeals for Veterans Claims (Court) has held that service connection can be granted for hearing loss where the Veteran can establish a nexus between his current hearing loss and a disability or injury he suffered while he was in military service. Godfrey v. Derwinski, 2 Vet. App. 352, 356 (1992). The Court has also held that VA regulations do not preclude service connection for a hearing loss which first met VA’s definition of disability after service. Hensley, supra, at 159.

As an initial matter, the Board finds the competent evidence of record confirms that the Veteran has a current diagnosis of bilateral hearing loss for VA purposes as evidenced by a December 2014 VA examination. 

The Board further notes that the Veteran is competent to describe his in-service noise exposure, and the Board finds his statements in such regard to be credible as such is consistent with the nature and circumstances of his military service as a welder as demonstrated by his DD 214. Specifically, in a July 2005 lay statement, the Veteran reported that he was a welder within an artillery unit and he suffered acoustic trauma on a daily basis because he used a gas welder without ear protection. Following his separation from service, he worked as an operator and he wore hearing protection. Furthermore, he did not report any exposure to loud noise outside of military service. Additionally, in a July 2005 buddy statement, the Veteran’s former colleague, W.A., began working with him in 1973 and the position required annual physicals, to include hearing tests. W.A. was a lead technician and was informed that the Veteran had an acute hearing deficiency that required further care by an ear, nose, and throat (ENT) specialist. In a September 2005 buddy statement from E. S., he reported that he noticed the Veteran’s hearing loss after he separated from service because E.S. had to repeat himself and the Veteran spoke very loud. Thus, the remaining question is whether the Veteran’s current bilateral hearing loss is related to his acknowledged in-service noise exposure.

In this regard, the Veteran’s service treatment records (STRs) are negative for any complaints, treatment, or diagnosis referable to bilateral hearing loss. Additionally, upon his April 1971 pre-induction examination, the Veteran was afforded audiological testing, and he exhibited the following pure tone thresholds in decibels:

HERTZ 500 1000 2000 3000 4000

RIGHT 25 15 5 - 5

LEFT 15 15 15 - 15

The Veteran’s STRs also contains a November 1971 annual examination, upon his audiological testing, he exhibited the following pure tone thresholds in decibels:

HERTZ 500 1000 2000 3000 4000

RIGHT 20 20 15 - 25

LEFT 25 20 20 - 25

At the time of his May 1973 separation examination, upon audiological testing, he exhibited the following pure tone thresholds in decibels:

HERTZ 500 1000 2000 3000 4000

RIGHT 30 30 15 - 15

LEFT 35 35 15 - 15

The Board notes that, the April 1971 pre-induction examination reveals that the Veteran’s right ear audiometric reading at 500 hertz showed a 25 decibel loss; however, although diminished, it does not meet VA’s definition of a “disability” for hearing loss under 38 C.F.R. § 3.385. As such, the Veteran’s presumption of soundness remains intact. See McKinney v. McDonald, 28 Vet. App. 15, 21 (2016) (holding that where the degree of hearing loss noted on a veteran’s entrance medical examination does not meet VA’s definition of a “disability” for hearing loss under 38 C.F.R. § 3.385, the veteran is entitled to the presumption of soundness). 

Private treatment records show right ear hearing loss disability as early as September 1992. In this regard, audiological testing revealed pure tone thresholds of 45, 50, 35, 40, and 45 decibels in the right ear at the specified frequencies. However, the Veteran’s left ear was not tested due to radical surgery in left ear. In November 1994, audiological testing revealed pure tone thresholds of 110, 70, 75, n/a, and 75 decibels in the left ear at the specified frequencies. The Board notes that the Veteran has submitted several private audiograms which continue to show a hearing loss disability.

In February 2006, the Veteran was afforded a VA examination to determine the nature and etiology of his bilateral hearing loss. At such time, the Veteran reported that he worked as a welder in the military without hearing protection. Following his military service, he worked as an operator for 33 years with hearing protection. He did not report any exposure to loud noise outside of military service. The examiner concluded that it was less likely that the Veteran’s hearing loss was due to his military service. However, the examiner failed to provide rationale. Moreover, as stated in the Introduction, the Veteran’s complete service treatment records were not associated with his file until March 2016. Therefore, the February 2006 examination is afforded no probative weight.

In December 2014, the Veteran was afforded another VA examination to determine the nature and etiology of his bilateral hearing loss. At such time, the examiner opined that it was at least as likely as not that the Veteran’s hearing loss was the result of his military noise exposure. As rationale, the examiner explained that high intensity sounds such as welding noise may cause permanent damage to the cochlea resulting in hearing loss. However, the examiner noted that no audiograms were provided and she was unable to determine whether hearing loss existed prior to military service.

Therefore, VA obtained a clarification opinion in January 2015. At such time, the examiner reviewed the Veteran’s C-file and opined that it was less as likely as not that his hearing loss was caused by or a result of military noise exposure. As rationale, the examiner explained that the shift noted at 500 and 1000 hertz was not consistent with hearing loss from noise exposure. She continued that, noise exposure typically affects the high-frequency range of hearing (2000 to 6000 hertz). The examiner further explained that, the low-frequency shifts could be due to testing variability, background noise present in the testing room, cerumen build-up, ear infection, poor headphone placement, or other factors. Moreover, the shift did not indicate hearing loss from noise damage, and even with the shift, the Veteran’s hearing was normal at separation. Based on the Veteran’s low frequency hearing loss while in service, and his current mixed hearing loss, the examiner concluded that he most likely has a medical condition that negatively affecting his hearing.

The January 2015 VA examiner further explained that, most of the Veteran’s current hearing loss was a conductive hearing loss, and this type of loss is not consistent with military noise exposure. Hearing loss caused by noise exposure is typically high-frequency sensorineural (permanent) inner ear hearing loss. However, she stated that, conductive hearing loss is typically due to ear disease, such as an ear infection, or can be caused by earwax build up or a middle-ear disease process. Furthermore, the examiner explained that, conductive hearing losses will resolve, or can be treated medically and brought to resolution by a medical physician. However, hearing loss from noise exposure is permanent, inner ear, hearing loss at the neural level that does not improve. Therefore, the examiner concluded that the Veteran’s conductive hearing loss is not from military noise. 

However, as the examiner only based her opinion on the Veteran’s November 1971 and May 1973 audiometers, her opinion is afforded no probative weight. As as stated in the Introduction, the Veteran’s April 1971 audiometer was not of the record at the time the June 2015 VA examiner provider her opinion. In this regard, the Veteran’s April 1971 and May 1973 examinations suggest a significant hearing threshold shift from entrance to separation. In the right ear, the Veteran had upward shifts of 5 decibels at the 500 hertz frequency, 15 decibels at the 1000 hertz frequency, and 10 decibels at both the 2000 hertz and 4000 Hertz frequencies. In the left ear, the Veteran had upward shifts of 20 decibels at both the 500 hertz and 1000 hertz frequencies. As such, the Board finds the July 2015 examiner’s opinion is inadequate as it is clearly based on an incomplete record.

After a careful review of the record, the Board finds that the evidence of record is at least in equipoise as to whether the Veteran’s bilateral hearing loss is related to his in-service noise exposure. In this regard, the Veteran has competently and credibly reported that he first noticed symptoms of hearing loss during service, coincident with his duties as a welder, and that he has continued to experience such symptoms since service. Moreover, the Veteran provided credible buddy statements from W.A. and E.S., which indicated that they noticed his hearing loss shortly after separating from service. They are competent to report symptoms of hearing loss, as they are subject to and readily observable by laypersons, and the Board has no reason to doubt their credibility. The Veteran also reported that he worked as an operator for 33 years with hearing protection and he did not have any exposure to loud noise outside of military service. See February 2006 VA examination report. Thus, the Board resolves all doubt in the Veteran’s favor and finds that his bilateral hearing loss is related to his acknowledged in-service noise exposure. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

2. Service connection for tinnitus.

As an initial matter, the Board finds that the Veteran has a current diagnosis of tinnitus. In an October 2014 lay statement, the Veteran reported that, while in the military, he worked on extremely loud welding machines with no hearing protection, and he believes that his duties as a welder resulted in his tinnitus, which he has been experiencing since his military service. Moreover, May 2016 VA treatment record indicates that he had subjective complaints of bilateral intermittent tinnitus. In this regard, tinnitus is a disorder with symptoms that can be identified through lay observation alone. See Charles v. Principi, 16 Vet. App. 370 (2002). As the Veteran has offered competent descriptions of experiencing tinnitus throughout the appeal, and the Board has no reason to doubt his credibility in this regard, the Board finds that he has a current diagnosis of such disorder. 

Consequently, the remaining inquiry is whether the Veteran’s current tinnitus is related to his military service, to include his acknowledged in-service noise exposure.

The Veteran was afforded a VA examination regarding the etiology of his tinnitus in December 2014. At such time, the examiner concluded that the Veteran’s tinnitus was less likely than not due to his military noise exposure. As rationale, the examiner explained that, due to the transient nature of the Veteran’s ringing in the ears, it is believed that what the Veteran is experiencing is transient ear noise and not tinnitus. However, the Board has found that the Veteran has a current diagnosis of tinnitus. Consequently, the Board accords no probative value to such opinion. 

Rather than remanding the matter for an etiological opinion, the Board finds that the Veteran’s reports in his October 2014 lay statement establishes the nexus element. Specifically, the Veteran provided a history of being exposed to hazardous noise during active service, and he stated that he first noticed the ringing in his ears during service and it has been reoccurring ever since. 

As noted above, tinnitus is a disability capable of lay observation, which includes as to the date of onset. As the Veteran stated that he had tinnitus during his active service and has continued to experience such condition since such time, and the Board has no reason to doubt his credibility, the nexus criterion is satisfied. 

In sum, and resolving all doubt in the Veteran’s favor, the Board finds that his current tinnitus had its onset during his active duty service. Therefore, service connection for tinnitus is warranted.

 

C. CRAWFORD

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Brennae L. Brooks, Associate Counsel