﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 190507-18856
DATE: August 31, 2020

ORDER

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is granted.

FINDINGS OF FACT

1. Bilateral hearing loss disability was not manifest in service and is unrelated to service; bilateral hearing loss disability was not manifest within one year of separation from service.

2. The Veteran’s tinnitus began in service and has continued to the present.

CONCLUSIONS OF LAW

1. The criteria to establish service connection for bilateral hearing loss have not been met. U.S.C.A. §§ 1111, 1131, 5107 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2019).

2. The criteria to establish service connection for tinnitus are met. 38 U.S.C. §§ 1110, 5107, 7104 (2012); 38 C.F.R. § 3.303 (2019).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service from January 1966 to December 1968.

This matter comes before the Board from a March 2019 rating decision by the agency of original jurisdiction (AOJ). In May 2019, the Veteran appealed to the Board, opting for a Board hearing, which was held before the undersigned Veterans Law Judge in November 2019.

Service Connection

Entitlement to VA compensation may be granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C. §§ 1110 (wartime service), 1131 (peacetime service); 38 C.F.R. § 3.303. 

To establish a right to compensation for a present disability, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service”-the so-called “nexus” requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service incurrence or aggravation of hearing loss may be presumed to have been incurred or aggravated if the disability is manifested to a compensable degree within one year of the Veteran’s discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309.

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. A decision of the U. S. Court of Appeals for the Federal Circuit (Federal Circuit), however, clarified that this notion of continuity of symptomatology since service under 38 C.F.R. § 3.303(b), which as mentioned is an alternative means of establishing the required nexus or linkage between current disability and service, only applies to conditions identified as chronic under 38 C.F.R. § 3.309 (a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

1. Bilateral hearing loss 

The Veteran asserts that his current hearing loss is related to acoustic trauma during service. Service personnel records reflect that the Veteran’s occupational specialty was artillery surveyor. He earned the rifle marksman badge. 

In the March 2019 rating decision, the AOJ found that the Veteran had been diagnosed with a hearing loss disability as defined by regulation, and that he had served in a specialty that had a high probability of noise exposure and conceded exposure to hazardous noise during service. 

The threshold for normal hearing is from 0 to 20 decibels, and that higher threshold levels indicate some degree of hearing loss. Hensley v. Brown, 5 Vet. App. 155, 159 (1993). For the purposes of applying the laws administered by VA, impaired hearing is considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

The Veteran’s service treatment records contain audiometric testing data from the beginning and the conclusion of the Veteran’s service, with numerous pertinent reports in between. VA has historically considered that, on November 1, 1967, Service Departments changed from using American Standards Association (ASA) standards to using International Standards Organization - American National Standards Institute (ISO-ANSI) for audiograms. Recent historical research, however, has revealed that the conversion date of November 1, 1967, may not have been consistent among all military branches until the regulatory standard for evaluating hearing loss was changed to require the use of ISO-ANSI units effective September 9, 1975.

While it appears that the Veteran’s hearing was tested under ASA standards on enlistment examination in November 1965, the standard used on separation examination in November 1968 is unclear. Thus, the Board will consider the recorded metrics under both standards, relying on the unit measurements most favorable to the Veteran’s appeal. To facilitate data comparison, the ISO-ANSI standards are listed first, and the ASA standards are represented by the figures in parentheses.

On enlistment examination in November 1965, the following puretone thresholds were recorded:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 20 (5) 5 (-5) 5 (-5) 5 (-5) 0 (-5)

LEFT 30 (15) 10 (0) 5 (-5) 15 (5) 10 (5)

The examiner indicated that the Veteran was qualified for entrance into service. he indicated “none” in the summary of defects and diagnoses. 

The report of the Veteran’s November 1968 separation examination indicates the following puretone thresholds:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 5 (-10) 0 (-10) 0 (-10) Not tested 0 (-5)

LEFT 0 (-15) 0 (-10) 0 (-10) Not tested 0 (-5)

The examiner assigned the Veteran a “1” rating for “H” under the PULHES profile system, indicating that his hearing was fit at the highest level. See Odiorne v. Principi, 3 Vet. App. 456, 457 (1992) (observing that the “PULHES” profile reflects the overall physical and psychiatric condition of the veteran’s capacity and stamina (“P”); upper extremities (“U”); lower extremities (“L”); hearing (“H”); eyes (“E”) and psychiatric condition (“S”); assessed on a scale of 1 (high level of fitness) to 4 (a medical condition or physical defect which is below the level of medical fitness for retention in the military service)). He determined that the Veteran was qualified for release from active duty, and noted no defects or diagnoses under the pertinent heading.

On VA examination in March 2019, the following puretone thresholds were recorded:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 30 50 65 60

LEFT 20 50 60 70 65

Speech recognition scores were 94 percent for the right ear and 62 percent for the left. The examiner noted that audiometric testing in November 1965 and November 1968 recorded hearing at normal levels for all tested frequencies, and that when comparing the results, no significant differences greater than normal test-retest variability were noted for any frequency in either ear. She concluded that the Veteran’s hearing loss was not related to service. She considered the Veteran’s report of significant noise exposure during service, but pointed out that hearing was normal at discharge and reiterated that no shifts in hearing greater than test-retest variability were noted. She indicated that, while the scientific community continued to evaluate the possibility of delayed onset hearing loss long after exposure to noise, the current most comprehensive study completed in 2006 concluded that prolonged delay in onset of noise-induced hearing loss was unlikely. 

During the November 2019 hearing, the Veteran described the nature of the noise he was exposed to during service. He indicated that he worked for the railroad following service, but that the noise that he was exposed to in that occupation was less than he experienced during service. When asked how soon following service he had difficulty hearing others and communicating, he indicated that “it was just an occasional thing.” 

Having carefully reviewed the evidence pertaining to this claim, the Board has determined that service connection is not warranted. The weight of the evidence does not demonstrate credible evidence of pathology in proximity to service or within years of separation. Thus, service connection is not warranted on a presumptive basis. 

Moreover, while the evidence reveals that the Veteran has current hearing loss disability, the most competent and probative evidence of record does not etiologically link these disabilities to service or any incident therein. Rather, the March 2019 VA examiner opined that the Veteran’s hearing loss was not related to service. She concluded that, based on normal hearing sensitivity on service entrance and separation, it was less likely than not that hearing loss was related to or caused by military noise exposure. This examiner provided a reasoned opinion based on a complete review of the Veteran’s history, interview and examination, to include the type of noise exposure that the Veteran had during service. In assigning high probative value to the VA examiner’s opinion, the Board notes that she had the claims file for review, specifically discussed evidence contained in the claims file, obtained a history from the Veteran, and conducted a complete examination. There is no indication that the VA examiner was not fully aware of the Veteran’s past history or that she misstated any relevant fact. The Board thus finds the VA examiner’s opinion to be of greater probative value than the Veteran’s unsupported statements. 

The Board acknowledges that the VA examiner relied, in part, on a lack of hearing loss diagnosis during service. 38 C.F.R. § 3.385 does not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service, if there is sufficient evidence to demonstrate a relationship between the Veteran’s service and his current disability. See Hensley v. Brown, 5 Vet. App. 155, 157 (1993). That case does not state, however, that the lack of a diagnosis cannot be considered as a factor in determining whether a nexus exists. Here, the examiner fully reviewed the record, and specifically noted the Veteran’s service and post-service history. The Veteran’s lay statements were considered. However, on review of the entire record, in the examiner’s opinion, a relationship was not established. Because the examiner considered more than just the lack of a diagnosis, the Board finds that the opinion is, in fact, adequate for the purpose of deciding this claim.

To the extent that the Veteran asserts that his current hearing loss disability is related to service, the Board observes that he may attest to factual matters of which he has first-hand knowledge, such as subjective complaints, and his assertions in that regard are entitled to some probative weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). He is competent to report incidents and symptoms in service and symptoms since then. He is not, however, competent to render an opinion as to the cause or etiology of the currently diagnosed hearing loss disability and tinnitus, because he does not have the requisite medical knowledge or training, and because such matter is beyond the ability of a lay person to observe. See Rucker v. Brown, 10 Vet. App. 67, 71 (1997); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). As discussed, the VA examiner considered the Veteran’s documented history, but ultimately concluded that the current hearing loss is not related to service. The Board finds the most probative evidence of record to be this opinion by the competent VA health care provider. The opinion was provided by a medical professional who reviewed the history, interviewed the Veteran, and provided opinions supported by rationale.

The grant of service connection requires competent evidence to establish a diagnosis and, as in this case, relate the diagnosis to the Veteran’s service. While the record contains evidence of bilateral hearing loss disability, the preponderance of the evidence is against finding that any such diagnosis is related to any injury or disease in service. Accordingly, the doctrine of reasonable doubt is not applicable in the instant appeal. Gilbert v. Derwinski, 1 Vet. App. 49, 58 (1990); 38 C.F.R. § 3.102 (2019).

2. Tinnitus

The Veteran has submitted written statements attesting to numerous instances of his ears ringing during service as the result of exposure to noise. His wife has also authored a statement regarding the Veteran’s complaints of ringing in his ears during and following service. During his November 2019 hearing, the Veteran described the extent of noise he experienced during service and indicated that he regularly sensed ringing in his ears following exposure to noise. 

Because tinnitus is a condition capable of lay observation, and because the Veteran’s reports are credible, service connection for tinnitus is warranted. See Charles v. Principi, 16 Vet. App. 370 (2002).

 

 

MICHAEL LANE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Barone, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.